**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CIVIL CASE NO. 14-CV-21854

TELEFONAKTIEBOLAGET LM
ERICSSON and ERICSSON INC.,

        Plaintiffs,

vs.                                                JURY TRIAL DEMANDED

WI-LAN USA, INC., WI-LAN INC. and
NETWORK MANAGEMENT
SOLUTIONS, LLC,

        Defendants.

_____/

## AMENDED COMPLAINT

Plaintiffs Telefonaktiebolaget LM Ericsson and Ericsson Inc. (collectively, "Ericsson"), by and through their undersigned counsel, file this Amended Complaint against Defendants Wi-LAN USA, Inc., Wi-LAN, Inc. and Network Management Solutions, LLC (collectively, "Wi-LAN") and state as follows:

## PARTIES

1.     Plaintiff Telefonaktiebolaget LM Ericsson ("LME") is a corporation organized and existing under the laws of the country of Sweden with its principal place of business at Torshamnsgatan 23, Kista, 164 83 Stockholm, Sweden.

2.     Plaintiff Ericsson Inc. is an indirect subsidiary of LME and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

3.      Defendant Wi-LAN, Inc. is a corporation organized and existing under the laws of the country of Canada with its principal place of business at 11 Holland Ave., Suite 608, Ottawa, Ontario, K1Y 4S1 Canada.

4.      Defendant Wi-LAN USA, Inc. is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 175 S.W. 7th Street, No. 1803, Miami, Florida 33130.  Wi-LAN USA, Inc. is a wholly owned subsidiary of Wi-LAN, Inc.

5.      Defendant Network Management Solutions, LLC ("Network Management") is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 175 S.W. 7th Street, No. 1803, Miami, Florida 33130.  Upon information and belief, Network Management is a subsidiary of Wi-LAN, Inc.

## JURISDICTION AND VENUE

6.      This action arises under the provisions of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Act, 35 U.S.C. §§ 101 *et seq.*  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(3), 1332(c), 1338(a), 1367, 2201 and 2202; and by virtue of Wi-LAN USA, Inc.'s and Network Management's domiciles within the Southern District of Florida, this Court has personal jurisdiction over Wi-LAN.

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(3) because the amount in controversy, exclusive of interest and costs, is in excess of $75,000, and because there is complete diversity of citizenship among the parties.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b), and because of Wi-LAN USA, Inc.'s and Network Management's domiciles within this District.

## FACTUAL BACKGROUND

### The Siemens License

9.     In July 1997, LME and Siemens Aktiengesellschaft ("Siemens") entered into a patent license agreement (the "Siemens License").  The Siemens License was duly executed by Siemens on July 10, 1997 and by LME on July 16, 1997.

10.     Under the Siemens License, Siemens granted LME and its subsidiaries, including Ericsson Inc., a broad license to make, have made, use, lease, sell and import telecommunications products under all patents owned or controlled by Siemens, one of its Subsidiaries or a Related Company (Subsidiaries and Related Company being defined by the Siemens License) between July 1, 1996 and July 1, 2002 and with a priority filing date earlier than July 1, 2002.

11.     The Siemens License extends to the customers of LME and its subsidiaries expressly or, at a minimum, under the doctrine of patent exhaustion.

12.     The Siemens License is effective for the entire term of all patents licensed therein.

### The Siemens Patents

13.     Wi-LAN claims to be the assignee of U.S. Patent Nos. 6,351,213 (the "'213 Patent"), 6,420,968 (the "'968 Patent"), 6,553,099 (the "'099 Patent") and 6,728,688 (the "'688 Patent") (collectively, the "Siemens Patents").

#### The '213 Patent

14.     Siemens, one of its Subsidiaries or a Related Company owned or controlled the '213 Patent at least as of July 10, 2000.

15. Wi-LAN claims that Siemens assigned the '213 Patent to Network Management on or about September 18, 2012.

16. According to Patent Office records, the '213 Patent has a priority filing date of January 19, 1998.

17. Ericsson has a license to the '213 Patent under the Siemens License.

### The '968 Patent

18. Siemens, one of its Subsidiaries or a Related Company owned or controlled the '968 Patent at least as of July 29, 1999.

19. Wi-LAN claims that Siemens assigned the '968 Patent to Network Management on or about September 18, 2012.

20. According to Patent Office records, the '968 Patent has a priority filing date of July 15, 1998.

21. Ericsson has a license to the '968 Patent under the Siemens License.

### The '099 Patent

22. Siemens, one of its Subsidiaries or a Related Company owned or controlled the '099 Patent at least as of March 30, 1999.

23. Wi-LAN claims that Siemens assigned the '099 Patent to Network Management on or about September 18, 2012.

24. According to Patent Office records, the '099 Patent has a priority filing date of September 23, 1996.

25. Ericsson has a license to the '099 Patent under the Siemens License.

**The '688 Patent**

26.  Siemens, one of its Subsidiaries or a Related Company owned or controlled the '688 Patent at least as of October 30, 1998 and until September 18, 2012.

27.  Wi-LAN claims that Siemens assigned the '688 Patent to Network Management on or about September 18, 2012.

28.  According to Patent Office records, the '688 Patent has a priority filing date of November 27, 1997.

29.  Ericsson has a license to the '688 Patent under the Siemens License.

**The LTE Litigation**

30.  On October 1, 2012, Wi-LAN filed a patent infringement suit against Ericsson in the Southern District of Florida, *Wi-LAN USA, Inc. and Wi-LAN, Inc. v. Telefonaktiebolaget L.M. Ericsson and Ericsson Inc.*, Case No. 12-CV-23569-DMM (S.D. Fla.) (the "LTE Litigation"). The LTE Litigation was assigned to the Honorable Judge Donald M. Middlebrooks (the "Florida Court").

31.  On February 13, 2013, Ericsson moved for summary judgment that it was entitled to a most-favored license pursuant to a Patent and Conflict Resolution Agreement ("PCRA") entered into between Ericsson and Wi-LAN in 2008. Specifically, Ericsson argued that the PCRA entitled Ericsson to the terms contained in a license agreement between Wi-LAN and BelAir Networks, Inc. dated December 30, 2009 (the "BelAir License").

32.  On June 19, 2013, the Florida Court granted Ericsson's motion for summary judgment. On July 8, 2013, the Florida Court issued its final judgment and declared that

Ericsson was "entitled to a license on the same terms as the BelAir license" (the "Judgment"). A copy of the Court's July 8, 2013 Judgment is attached as Exhibit 1.

33. As a result of the Judgment, and by operation of Ericsson's rights under the PCRA, Ericsson is entitled to, and by operation of the Judgment has, a license to the Siemens Patents under the terms of the BelAir License.

34. On June 21, 2013, counsel for Ericsson contacted counsel for Wi-LAN, presented a license between Ericsson and Wi-LAN on the same terms as the BelAir License, and offered to tender payment as required under the BelAir License.

35. In response, on June 27, 2013, counsel for Wi-LAN contacted counsel for Ericsson and stated that "Wi-LAN believes that the Court's June 19 Order is in error ... Wi-LAN has no intention of granting Ericsson a license at this time based on the terms that you have provided."

36. Wi-LAN has failed to seek a stay of the Florida Court's Judgment.

37. Despite the Florida Court's ruling and Wi-LAN's failure to seek a stay of the Judgment, Wi-LAN is interfering with Ericsson's business relationships and taking other actions resulting in injury to Ericsson as follows.

**Wi-LAN Accuses Ericsson's Customers of Infringing the Siemens Patents**

**Cincinnati Bell Wireless LLC**

38. On February 13, 2013, Wi-LAN contacted Cincinnati Bell Wireless LLC ("CBW"), alleging that CBW "requires a license to certain patents relating to network alarm management and lawful intercept technologies," including the '213, '099 and '688 Patents.

Additionally, Wi-LAN offered to "present [its] infringement analysis in a face-to-face meeting ... to explain [its] findings and licensing approach ...."

39. CBW is a customer of Ericsson and uses Ericsson's products in its network.

40. On April 15, 2014, CBW demanded that Ericsson defend and indemnify CBW pursuant to the May 22, 2003 Master Purchase Agreement between Ericsson Inc. and CBW for any cost or damage arising from Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**East Kentucky Network, LLC**

41. On March 20, 2013, Wi-LAN contacted East Kentucky Network, LLC ("East Kentucky"), alleging that East Kentucky's wireless products and services infringe several Wi-LAN patents related to network alarm management and lawful intercept technologies, specifically the '213, '099 and '688 Patents. Additionally, Wi-LAN offered to "present [its] infringement analysis in a face-to-face meeting ... to explain [its] findings and licensing approach ...."

42. East Kentucky is a customer of Ericsson and uses Ericsson's products in its network.

43. On April 2, 2014, East Kentucky contacted Ericsson seeking Ericsson's assistance in defending East Kentucky from Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**Cellular South, Inc.**

44. On February 13, 2013, Wi-LAN contacted Cellular South, Inc. dba C Spire Wireless ("C Spire"), alleging that C Spire requires a license to certain Wi-LAN patents

related to network alarm management and lawful intercept technologies, specifically the '213, '099 and '688 Patents. Additionally, Wi-LAN offered to "present [its] infringement analysis in a face-to-face meeting ... to explain [its] findings and licensing approach ...."

45. C Spire is a customer of Ericsson and uses Ericsson's products in its network.

46. In April of 2013, C Spire contacted Ericsson seeking Ericsson's assistance regarding Wi-LAN's claims of patent infringement as they relate to Ericsson's products. As recently as February of 2014, Wi-LAN continued to contact C Spire asserting claims of patent infringement relating to Ericsson's products.

**Carolina West Wireless, Inc.**

47. On April 18, 2013, Wi-LAN contacted Carolina West Wireless, Inc. ("Carolina West"), alleging that Carolina West's wireless products and services infringe several Wi-LAN patents related to network alarm management and lawful intercept technologies, specifically the '213, '099 and '688 Patents. Additionally, Wi-LAN offered to "present [its] infringement analysis and to provide further details of [its] licensing approach."

48. Carolina West is a customer of Ericsson and uses Ericsson's products in its network.

49. On June 5, 2013, Carolina West contacted Ericsson seeking assistance regarding Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**Cricket Wireless, LLC**

50. On February 26, 2013, Wi-LAN contacted Cricket Wireless, LLC ("Cricket"), alleging that Cricket's compliance with the 3GPP Fault Management Standard infringes the '213 Patent.

51. Cricket is a customer of Ericsson and uses Ericsson's products in its network.

52. On March 22, 2013, Cricket demanded that Ericsson defend and indemnify Cricket pursuant to a System Equipment Purchase Agreement dated August 28, 2000, an Amended and Restated System Equipment Purchase Agreement dated December 23, 2002, a System Equipment Purchase Agreement dated October 11, 2005, a System Equipment Purchase Agreement dated June 11, 2007 and any Amendments thereto for any cost or damage arising from Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**Clearwire Corporation**

53. On March 13, 2013, Wi-LAN contacted Clearwire Corporation ("Clearwire"), alleging that Clearwire infringes certain of Wi-LAN patents related to network alarm management and lawful intercept technologies, specifically the '213, '688, and '099 Patents. Additionally, Wi-LAN offered to "present [its] infringement analysis in a face-to-face meeting ... to explain [its] findings and licensing approach ...."

54. Clearwire is a customer of Ericsson and uses Ericsson's products in its network.

55. On May 7, 2013, Clearwire demanded that Ericsson defend and indemnify Clearwire pursuant to a Managed Services Agreement dated July 7, 2009 and an Additional Services Order dated May 16, 2011 for any cost or damage arising from Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**General Communications, Inc.**

56. On March 13, 2013, Wi-LAN contacted General Communications, Inc. ("GCI"), alleging that the operation of GCI's network and GCI's sale of wireless services infringes the '213, '099 and '688 Patents. Additionally, Wi-LAN expressed its desire to "present [its] infringement analysis and to provide further details of [its] licensing approach."

57. GCI is a customer of Ericsson and uses Ericsson's products in its network.

58. On September 16, 2013, GCI demanded that Ericsson defend and indemnify GCI pursuant to the Master Purchase Agreement between Ericsson and GCI effective September 26, 2007 for any cost or damage arising from Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**Alaska Communications Systems Group, Inc.**

59. On March 20, 2013, Wi-LAN contacted Alaska Communications Systems Group, Inc. ("ACS"), alleging that ACS's wireless products and services infringe several Wi-LAN patents related to network alarm management and lawful intercept technologies, specifically the '213, '099 and '688 Patents. Additionally, Wi-LAN offered to "present [its] infringement analysis in a face-to-face meeting ... to explain [its] findings and licensing approach ...."

60. ACS is a customer of Ericsson and uses Ericsson's products in its network.

61. On May 1, 2013, ACS contacted Ericsson seeking assistance regarding Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**AT&T Inc.**

62. On February 27, 2013, Wi-LAN contacted AT&T Inc. ("AT&T"), alleging AT&T infringes several Wi-LAN patents related to network alarm management and lawful intercept technologies, specifically the '213, '099 and '688 Patents.

63. AT&T is a customer of Ericsson and uses Ericsson's products in its network.

64. On August 23, 2013, AT&T demanded that Ericsson defend and indemnify AT&T pursuant to a Master Sales Agreement between the parties dated October 31, 2001 for any cost or damage arising from Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**T-Mobile US, Inc.**

65. Wi-LAN also contacted T-Mobile US, Inc. ("T-Mobile"), alleging that T-Mobile's equipment and services infringe certain of Wi-LAN's patents, specifically the '213, '099 and '688 Patents.

66. T-Mobile is a customer of Ericsson and uses Ericsson's products in its network.

67. On February 27, 2014, T-Mobile demanded that Ericsson defend and indemnify T-Mobile pursuant to agreements in place between Ericsson Inc., T-Mobile and other entities related to T-Mobile. T-Mobile seeks indemnification for any cost or damage arising from Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**Sprint Nextel Corporation**

68. On October 18, 2012, Wi-LAN contacted Sprint Nextel Corporation ("Sprint"), alleging that, based on Wi-LAN's assessment of Sprint's products and services,

11

Sprint requires a license to certain Wi-LAN patents related to network alarm management and unlawful intercept technologies.

69. Sprint is a customer of Ericsson and uses Ericsson's products in its network.

70. On May 15, 2014, Sprint contacted Ericsson seeking assistance regarding Wi-LAN's claims of patent infringement as they relate to Ericsson's products.

**Communications Between the Parties**

71. On July 24, 2013, Christopher Dunstan ("Dunstan"), counsel for Ericsson, contacted Nicholas Wilson ("Wilson"), Senior Licensing Counsel for Wi-LAN, by letter. Dunstan informed Wilson that the Siemens Patents were covered by the Siemens License, and that "Wi-LAN cannot maintain a credible infringement claim for these patents against any Ericsson customer to the extent that such claim implicates Ericsson products or services."

72. On November 5, 2013, Dunstan contacted Wilson again by letter. In that letter, Dunstan referred to the prior correspondence, to which there had been no response, and referred specifically to a new demand asserted by Wi-LAN against GCI. In that letter, Dunstan again explained that "Ericsson is licensed to each of these [Siemens] patents pursuant to an agreement with Siemens. As such, Wi-LAN cannot maintain a credible infringement claim for these patents against GCI."

73. On December 13, 2013, Dunstan wrote to Wilson yet again, again observing that his prior correspondence had been ignored by Wi-LAN. In that letter, Dunstan objected to a recent demand made by Wi-LAN against ACS, and again reiterated that Ericsson and its customers had a license to the asserted patents.

74. Finally, on December 18, 2013, Wilson responded to Dunstan's three prior letters. In that letter, Wi-LAN asserted that the Siemens License was inapplicable because "Ericsson's products do not embody" the technology claimed in the Siemens Patents. Wi-LAN also took the position that it "has not seen any license agreement between Siemens and Ericsson and therefore does not acquiesce to its existence or, if it exists, what the license may or may not cover."

75. On February 19, 2014, Dunstan responded to that letter, asking that Wi-LAN confirm "that Wi-LAN's theory of infringement by Ericsson's customers does not implicate any Ericsson product or service." Wi-LAN did not respond to that letter.

76. On April 11, 2014, Dunstan again wrote to Wilson. In that letter, Dunstan asserted Ericsson's rights under the Judgment, which granted Ericsson a license to the Siemens Patents under the same terms as the BelAir License. Dunstan also enclosed a copy of the Siemens License, and reiterated that the Siemens License granted Ericsson a license under all of the Siemens Patents. Dunstan also requested confirmation by April 25, 2014 that Wi-LAN either discontinue its patent infringement assertions against Ericsson's customers, or confirm that "any such assertion does not in any way implicate any Ericsson product or equipment."

77. On April 25, 2014, Wilson responded to Dunstan's letter by email, stating that "Wi-LAN disagrees with most if not all of your letter and views some of its content as egregious and overreaching. We are reviewing the matter and will let you know once we have a further reply." No other information was offered by Wilson.

## COUNT I
## DECLARATORY JUDGMENT ON BREACH OF SIEMENS LICENSE

78. The allegations of paragraphs 1 through 77 are incorporated by reference into Count I as though fully set forth therein.

79. The Siemens License is a valid and enforceable contract.

80. The Siemens License protects Ericsson and its customers from claims of patent infringement on patents covered by that license.

81. Each of the Siemens Patents is subject to the Siemens License.

82. As the assignee of the Siemens Patents, Wi-LAN is bound by the terms of the Siemens License.

83. By asserting claims under the Siemens Patents against Ericsson's telecommunications customers, Wi-LAN is in breach of the Siemens License.

84. An actual and justiciable controversy exists between Ericsson and Wi-LAN regarding the applicability and enforceability of the Siemens License in light of the indemnification demands made by Ericsson's customers, which were precipitated by Wi-LAN's patent infringement claims under the Siemens Patents.

85. Ericsson seeks a declaration from the Court that the Siemens License is valid and binding upon Wi-LAN, that Ericsson and its customers and vendors have a license to the Siemens Patents, and that Wi-LAN may not assert the Siemens Patents or any other patents covered by the Siemens License against Ericsson, its customers or its vendors.

86. Ericsson further seeks a declaration that Ericsson's customers and vendors have a license to the Siemens Patents, to the extent of the customers' and vendors' use, sale

and offer for sale of Ericsson products, at minimum, based on the doctrine of patent exhaustion.

## COUNT II
## DECLARATORY JUDGMENT ON ORDER

87. The allegations of paragraphs 1 through 86 are incorporated by reference into Count II as though fully set forth therein.

88. On July 8, 2013, the Florida Court issued its final judgment, declaring that Ericsson is entitled to a license from Wi-LAN on the same terms as the BelAir License.

89. The terms of the BelAir License encompass the Siemens Patents, and therefore Ericsson is entitled to, and pursuant to the Judgment has, a license to the Siemens Patents.

90. An actual and justiciable controversy exists between Ericsson and Wi-LAN regarding the applicability of the Judgment as it pertains to Wi-LAN's assertion of the Siemens Patents against Ericsson's customers.

91. Ericsson seeks a declaration that, pursuant to the Judgment, Wi-LAN may not assert the Siemens Patents or any other patents covered by the BelAir License against Ericsson, its customers or its vendors.

## COUNT III
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

92. The allegations of paragraphs 1 through 91 are incorporated by reference into Count III as though fully set forth therein.

93. Ericsson has been and continues to be engaged in a business relationship with CBW, East Kentucky, C Spire, Carolina West, Cricket, Clearwire, GCI, ACS, AT&T, T-Mobile, and Sprint (the "Customers").

94. Wi-LAN had knowledge of Ericsson's business relationships with the Customers when Wi-LAN threatened the Customers by alleging patent infringement.

95. Wi-LAN's allegations of patent infringement against the Customers intentionally and unjustifiably interfered with Ericsson's business relationships with the Customers.

96. As a direct and proximate result of Wi-LAN's actions, Ericsson has suffered, and is continuing to suffer, actual damages, including without limitation attorneys' fees.

## COUNT IV
## VIOLATION OF FLORIDA STATUTES § 501.201, ET SEQ.
## THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

97. The allegations of paragraphs 1 through 96 are incorporated by reference into Count IV as though fully set forth therein.

98. Ericsson is a person as that term is used in Section 501.211 of Florida's Deceptive and Unfair Trade Practices Act.

99. Wi-LAN intentionally and unfairly interfered with Ericsson's business relationships with the Customers, as described above.  Wi-LAN did so in bad faith, with knowledge that Ericsson already had a license to the Siemens Patents by virtue of the Siemens Agreement and that Ericsson had a license to the Siemens Patents by virtue of the PCRA, the Judgment and the BelAir License.

100. Wi-LAN's actions constitute unfair and/or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act.

101. As a direct and proximate result of Wi-LAN's actions, Ericsson has suffered, and is continuing to suffer, actual damages.

102. Ericsson is entitled to an award of its attorneys' fees and costs in this action pursuant to Florida Statutes §§ 501.211(2) and 501.2105.

## PRAYER FOR RELIEF

WHEREFORE, Ericsson respectfully requests that the Court enter a Judgment and Order against Wi-LAN as follows:

(a) Enter judgment in favor of Ericsson and against Wi-LAN on Counts I and II, declaring that:

    (i) the Siemens Patents are subject to the Siemens License;

    (ii) Ericsson, its customers and its vendors have a license to the Siemens Patents pursuant to the Siemens License;

    (iii) Wi-LAN is bound by the terms of the Siemens License;

    (iv) the Siemens Patents are subject to the PCRA, Judgment and the terms of the BelAir License;

    (v) Ericsson, its customers and its vendors are entitled to and have a license to the Siemens Patents pursuant to the Judgment;

(b) Enter a mandatory injunction that neither Wi-LAN nor anyone acting in concert with it shall assert or bring a claim against Ericsson, its customers or its vendors

under the Siemens Patents or any other patent covered by the Siemens License or the BelAir License;

  (c) Enter judgment in favor of Ericsson and against Wi-LAN on Counts III and IV in an amount to be determined at trial;

  (d) Enter an award to Ericsson of its attorneys' fees and expenses under at least 35 U.S.C. § 285 and/or Florida Statutes §§ 501.211(2) and 501.2105 (Florida's Deceptive and Unfair Trade Practices Act);

  (e) Enter an award to Ericsson of costs incurred; and

  (f) Grant Ericsson such other relief as the Court may deem just, proper and equitable under the circumstances.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Ericsson demands a trial by jury on all issues so triable.

| | |
|---|---|
| Dated:  May 20, 2014 | Respectfully submitted, |

                *George E. Schulz, Jr.*
                George E. Schulz, Jr.
                Florida Bar No. 169507
                Email:  buddy.schulz@hklaw.com
                HOLLAND & KNIGHT LLP
                50 North Laura Street, Suite 3900
                Jacksonville, FL  32202
                Telephone:   (904)353-2000
                Facsimile:    (904)358-1872

Joshua C. Krumholz, Esq.
(*pro hac vice application forthcoming*)
Email:  joshua.krumholz@hklaw.com
Jacob K. Baron, Esq.
(*pro hac vice application forthcoming*)
Email:  jacob.baron@hklaw.com
Jacob W. S. Schneider, Esq.
(*pro hac vice application forthcoming*)
Email:  jacob.schneider@hklaw.com
Zachary A. Weinman, Esq.
(*pro hac vice application forthcoming*)
Email:  zachary.weinman@hklaw.com
HOLLAND & KNIGHT LLP
10 Saint James Avenue; 11th Floor
Boston, MA  02116
Telephone:   (617)523-2700
Facsimile:    (617)523-6850

*Attorneys for Telefonaktiebolaget LM Ericsson and Ericsson Inc.*

#29783641_v1