## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| TELEFONAKTIEBOLAGET LM ERICSSON and ERICSSON INC., | ) ) ) ) | |
| *Plaintiffs*, | ) ) | CASE NO. 14-CV-21854 |
| v. | ) ) | |
| WI-LAN USA, INC., WI-LAN INC. and NETWORK MANAGEMENT SOLUTIONS, LLC | ) ) ) | |
| *Defendants.* | ) ) ) ) ) ) | |

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND
## INCORPORATED MEMORANDUM

## I.    INTRODUCTION

Defendants Wi-LAN USA, Inc., Wi-LAN Inc. (collectively "Wi-LAN"), and Network Management Solutions ("NMS") (collectively "Defendants") hereby move to dismiss all counts of Plaintiffs' Telefonaktiebolaget LM Ericsson and Ericsson Inc. (collectively "Ericsson") Amended Complaint.

Wi-LAN has engaged numerous telecommunications companies in licensing discussions. These companies' systems incorporate some Ericsson components, along with components from other sources besides Ericsson. Ericsson's Complaint attempts to hijack Wi-LAN's and NMS's lawful licensing activity by asserting that these telecom companies' activities are 100% licensed through Ericsson.[1] That claim is impossible on its face, and Ericsson's bare-bones complaint fails to plead the facts necessary to reach that dramatic result. Ericsson pleads only the *conclusion*—that it has a license and its customers are somehow entitled to a complete license as well—but omits all necessary *facts* to show that a license defense is available for particular products and that Ericsson is the real party in interest.

- **No identification of products at issue**: Ericsson fails to cite a single Ericsson product that Wi-LAN and NMS have accused of infringement and fails to name a single customer system that allegedly incorporates an Ericsson product;

---

[1] Ericsson bases Count II on the final judgment of this Court in Case No. 12-23569-CIV-Middlebrooks/Brannon, in which this Court determined that "Defendants are entitled to a license on the same terms as the BelAir license." That case is currently on appeal and scheduled to be argued this Thursday, July 10. While Wi-LAN maintains its position that the final judgment in that case was reached in error, and reversal on appeal would also require dismissal of Count II, the present motion is in no way based on any challenge to the validity of the prior judgment.

- **No facts on how products are licensed**: Ericsson fails to tie any specific product—Ericsson's or its customers—to any provision of any license, for example by showing that any product in dispute is covered by Wi-LAN's allegedly licensed patents;

- **No facts on Ericsson's standing**: Ericsson fails to plead that, even if a license defense were available, Ericsson is the real party in interest because it is actually indemnifying customers for particular acts of using particular Ericsson products under particular agreements, none of which are identified.

The main issue is that while Ericsson's Complaint goes on at some length about possible disputes between Wi-LAN and NMS and certain of Ericsson's customers, it is so fundamentally lacking both in substance and in form that it completely fails to demonstrate whether any rights *of Ericsson* are impacted, and indeed whether *Ericsson* actually has any justiciable controversy with Wi-LAN and NMS at all.

In Counts I and II, which essentially seek a declaratory judgment of non-infringement on the part of Ericsson's customers based on Ericsson's alleged licenses, Ericsson fails to plead numerous essential facts even to support its standing to sue, let alone any claim for relief, including what products are at issue and how they are at issue. Ericsson itself has not been accused of infringing any of the relevant patents. Moreover, Ericsson has failed to allege that it is actually the legal indemnitor of any of the companies it purports to speak for, let alone what accused acts of infringement Ericsson indemnifies or what Ericsson products are involved, and why any purported indemnity obligation covers that specific infringement. Thus, Ericsson has failed to allege the basic facts required for the Court to find that Ericsson has standing to sue under settled Federal Circuit law. It is Ericsson's burden to establish that the jurisdictional

requirement of standing has been met.  Ericsson fails to do so and Counts I and II must therefore be dismissed.  Moreover, Ericsson's claims are so hopelessly broad that they even appear to include supposedly licensed activities of Ericsson's customers that have nothing whatsoever to do with Ericsson or its products.  Indeed, while Ericsson fails to identify a single licensed customer product or activity, its prayer for relief seeks a declaration and an injunction so broad as to excuse all of Ericsson's customers from any liability regardless of whether it even arose from anything involving an Ericsson product at all.  *See* Complaint at 17-18.  Under controlling Supreme Court precedent, these counts fail to allege facts sufficient to support a plausible inference that Ericsson is entitled to any of the relief it seeks.

Counts III and IV, alleging tortious interference and deceptive practices respectively, bootstrap their allegations on the failed claims of Counts I and II and fail for the same reasons.  Additionally, these counts, which allege that Wi-LAN's and NMS's lawful patent licensing and litigation activities are covered by state-level contract and tort law, are preempted by federal patent law and are barred by the First Amendment.  Counts III and IV must therefore also be dismissed.

Further, Ericsson improperly utilizes so-called "shotgun pleadings"—asserting a series of allegations and then incorporating those allegations in the counts of the complaint without explaining which allegations relate to which elements of which count or how.  This vague and deficient pleading strategy compounds the failure of Ericsson's Complaint to allege any cognizable claim for relief by forcing Defendants and the Court to guess about which allegation is relevant to which element of which count and in what way.  Courts in the Eleventh Circuit have rejected such pleadings as per se inadequate, and this fact, in and of itself, is yet another sufficient reason for the Court to dismiss Ericsson's Complaint.

Ericsson has failed to plead sufficient facts to give rise to a plausible inference that Ericsson has any entitlement to relief at all, nor even that there is any legally cognizable right at issue here that actually belongs to Ericsson. The Federal Rules of Civil Procedure dictate that Wi-LAN and NMS not be forced to respond to these vague and conclusory allegations. And substantive federal law and constitutional law establish that, to the extent the allegations can even be understood, they cannot be supported. Ericsson's Complaint should be dismissed.

## II.     COUNTS I AND II MUST BE DISMISSED FOR LACK OF STANDING

Equally dispositive as Ericsson's failure to plead any facts that would give rise to a plausible claim for relief is Ericsson's complete failure to satisfy the settled jurisdictional requirements to have standing to sue. Ericsson's Counts I and II are not based on any allegation of infringement Wi-LAN or NMS has made against Ericsson. Rather, Ericsson's Complaint would have this Court adjudicate a hypothetical claim of non-infringement on behalf of Ericsson's non-party customers with respect to patents that have not been asserted against Ericsson. Further, Ericsson has not alleged that it owes an indemnity to any customer for infringement of any of these patents. Thus, while Ericsson's first two counts boil down to a claim of third-party non-infringement, Ericsson has failed to plead facts sufficient to show the existence of a legal controversy between Ericsson and Defendants with respect to any activity Defendants accuse of infringing.

The Supreme Court teaches that: "[S]tanding is not dispensed in gross. Rather, a plaintiff must demonstrate standing *for each claim* he seeks to press *and for each form of relief* that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quotations omitted, emphasis added). As the Federal Circuit has explained: "[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a

declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers."  *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1329 n.4 (Fed. Cir. 2012) (quotation omitted); *see also Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1316 (Fed. Cir. 2011) ("In the absence of an indemnity agreement between Starmark and one of these 'customers,' Starmark has, at most, only an economic interest in clarifying its customers' rights under Creative's patents. Such an economic interest alone, however, cannot form the basis of an 'actual controversy' under the Declaratory Judgment Act.").

Rather than alleging that it is an actual indemnitor of any customer, Ericsson states only that its customers, at most, "demanded that Ericsson defend and indemnify" them.  Complaint ¶ 40, 52, 55, 58, 64, 67.  In numerous cases Ericsson did not even go that far, alleging only that its customers sought "Ericsson's assistance in defending . . . from Wi-LAN's claims of patent infringement as they relate to Ericsson's products."  *Id.* ¶ 43.  *See also id.* ¶¶ 46, 49, 61, 70. These pleadings are insufficient to establish a case or controversy involving Ericsson because Ericsson never alleges that it has actually indemnified any customer or is legally obligated to do so, let alone which customers have been indemnified and for which use of which Ericsson product, which is a requirement to establish standing based on infringement allegations against a third party.  Thus, Ericsson has failed to allege facts sufficient to support a finding that there is standing or jurisdiction to resolve its customers' supposed license defense to Wi-LAN's infringement allegations against them.  It is Ericsson's burden to plead facts that satisfy the standing requirement.  Accordingly, Ericsson's Counts I and II must be dismissed for lack of standing.

### III.   COUNTS I (SIEMENS LICENSE) AND II (BELAIR LICENSE) FAIL TO STATE A CLAIM

In Counts I and II, Ericsson attempts to plead, apparently under the Declaratory Judgment Act, that Ericsson's customers should be entirely shielded from any attempt by Wi-LAN or NMS to assert their patents or seek to enter licenses with those customers.  But Ericsson does this without pointing to any Ericsson product that Wi-LAN or NMS has accused of infringing the asserted patents, without pointing to a single claim of any Wi-LAN or NMS patent that is allegedly embodied by such Ericsson product such that it could even plausibly be licensed. Furthermore, while relying on two licenses, Ericsson fails to quote any contract language that would protect its customers, either because the customers are accused of infringing exclusively based on their use of a licensed Ericsson product, or because the licenses would protect combinations of Ericsson's equipment with other technology not provided by Ericsson.  Each of these facts is essential to a plausible claim for relief, but Ericsson does not allege any of them.  It is therefore impossible to discern from Ericsson's Complaint any basis at all to support Ericsson's supposed right to preempt Wi-LAN and NMS's legitimate business activities and shield any and all Ericsson customers from any and all possible liability for actions that—as far as Ericsson's pleadings suggest—have nothing to do with any rights of Ericsson.   And notwithstanding that Ericsson has failed to plead essential facts that would be necessary to establish that even one of its customers has a license to even one act of accused infringement, Ericsson's prayer for relief seeks an unlimited declaration that "Ericsson, its customers and its vendors have a license to the Siemens patents," Complaint at 17, and an injunction that "neither Wi-LAN nor anyone acting in concert with it shall assert or bring a claim against Ericsson, its customers or its vendors under the Siemens patents or any other patent covered by the Siemens

License or the BelAir License," *Id*. at 17-18.  Thus, Ericsson's claims as pled would require not just a factual allegation to support the conclusion that some customer activity is licensed, but that all of it is.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court expounded on the detail required for a complaint to meet the pleading standard of Federal Rule of Civil Procedure 8, and thus survive a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'").  The Court explained that a complaint must plead sufficient factual matter, to "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. As explained by the Eleventh Circuit, "dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).  In other words, the "factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'"  *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557).  Plausibility is something less than probability, but more than possibility; where "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  As the Supreme Court explained, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id*. at 678-9.

In actions seeking a declaratory judgment of non-infringement, which, viewed most generously, is what Counts I and II of Ericsson's complaint represent, courts have required that the party seeking the declaratory judgment make specific allegations about which exactly of its products do not infringe. *See*, *e.g.*, *Wistron Corp. v. Phillip M. Adams & Assocs.*, 2011 U.S. Dist. LEXIS 46079, *38-39 (N.D. Cal. Apr. 28, 2011) ("Plaintiffs' claim for a declaratory judgment of noninfringement which fails to identify any specific products is more problematic. . . . [W]ithout identifying the accused products, there simply is no way to adjudicate an infringement claim. Absent identification of the products accused of infringement, there is no concrete case or controversy or sufficient specificity to satisfy *Twombly* and *Iqbal*."). *See also PPS Data, LLC v. Allscripts Healthcare Solutions, Inc.*, 2012 U.S. Dist. LEXIS 8367 (M.D. Fla. Jan. 25, 2012) ("No product or service is alleged to be non-infringing in Defendant's counterclaim. Defendant's claim, in contrast, seeks a generalized holding of non-infringement—relief which is not cabined by conduct, an accused product, or a relevant time period. This Court will not give Defendant a judicial imprimatur that all of its products, services, and conduct are 'ok.'").

Notwithstanding the Supreme Court's requirement that Ericsson plead facts sufficient to give rise to a plausible claim for relief, Ericsson does not identify what customer activity Wi-LAN and NMS have accused; what Ericsson product constitutes the infringing article, or a substantial embodiment of any claim of any Wi-LAN or NMS patent; or why such an unidentified Ericsson product itself is allegedly licensed. Indeed Ericsson does not quote a single relevant provision of either of the licenses upon which it bases its Complaint that would be remotely sufficient to draw the conclusion that any benefits of such licenses are passed along to Ericsson's customers. Instead, Ericsson merely provides boilerplate allegations that in "the

Siemens License, Siemens granted LME and its subsidiaries, including Ericsson Inc., a broad license to make, have made, use, lease, sell and import telecommunications products [and that the license] extends to the customers of LME and its subsidiaries expressly or, at a minimum, under the doctrine of patent exhaustion" *id*. ¶ 10-11; that "by operation of the Judgment has, a license to the Siemens Patents under the terms of the BelAir License," *id*. ¶ 33; and that each alleged customer "is a customer of Ericsson and uses Ericsson's products in its network," Complaint ¶¶ 39, 42, 45, 48, 51, 54, 57, 60, 63, 66, 69.  Ericsson's failure to identify the specific accused activity, to explain either how any infringing article ***is*** the claimed invention or a substantial embodiment thereof, or why any such activity has the benefit of any license, is fatal to Counts I and II of its Complaint.

The doctrine of patent exhaustion may be applicable when an Ericsson license might benefit its customers.  Specifically, patent exhaustion means that if Ericsson has a license to sell its products to its customers, then those customers cannot be charged with infringement of the licensed patents ***merely*** because of their use of the licensed Ericsson's products.  The Supreme Court has held that "[t]he authorized sale of an article that substantially embodies a patent exhausts the patent holder's rights" where "substantially embodies" means that there is "no reasonable noninfringing use and [the article as sold] included all the inventive aspects of the patented methods." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008). However, under *Quanta*, Ericsson's authorized sale of component products does not exhaust Wi-LAN's rights against Ericsson's customers who combine those components to practice patents that are ***not*** substantially embodied by Ericsson's components alone.  Thus, to plead any claim that Ericsson's licenses protect its customers from Wi-LAN and NMS's present allegations of infringement, Ericsson must to allege facts that if true would establish that the activities of its

customers, which Wi-LAN and NMS accuse of infringement, are the ***same*** activities to which Ericsson has a license or that some specific Ericsson product constitutes a substantial embodiment of such alleged infringement.

No such allegation is found anywhere in the Complaint as Ericsson has neither specified the accused customer activities, nor which supposedly licensed Ericsson products are involved, nor quoted any contract language that could possibly support an allegation that Ericsson's rights are somehow extended to its customers' mere use of unspecified Ericsson products in combination with other technology to infringe Wi-LAN's or NMS's patents.  Indeed, Ericsson admits that Wi-LAN and NMS are neither accusing Ericsson or its products of infringement: "Wi-LAN asserted that the Siemens License was inapplicable because 'Ericsson's products do not embody' the technology claimed in the Siemens Patents."  Complaint ¶ 74.

Merely pleading that a customer "uses Ericsson's products in its network", Complaint ¶¶ 39, 42, 45, 48, 51, 54, 57, 60, 63, 66, 69, does not give rise to any plausible claim that Ericsson's customers therefore have a license for such activity, absent a specific allegation either that (i) Wi-LAN and NMS are simply accusing Ericsson products of infringement, or that (ii) Wi-LAN and NMS have accused activities of which a specific Ericsson product constitutes a substantial embodiment and that such Ericsson product has no non-infringing uses.  Therefore, under *Quanta*, Ericsson has failed to plead facts under which the accused activity of its customers has the benefit of any Ericsson license.

Lastly, Ericsson's complaint also fails because Ericsson fails to allege that ***all*** of the customer activity Wi-LAN and NMS have accused of infringement utilize, and will utilize in the future, Ericsson's products exclusively; yet Ericsson seeks to enjoin Wi-LAN and NMS from communicating with any of its customers regarding any infringement regardless of whether

Ericsson's products are even involved.  This argument too is baseless, overreaching, and justifies dismissing Counts I and II of the Complaint.

## IV.    COUNTS III (TORTIOUS INTERFERENCE) AND IV (DECEPTIVE PRACTICES) LIKEWISE FAIL TO STATE A CLAIM

In Counts III and IV, Ericsson attempts to plead state law claims of tortious interference and deceptive business practices.  The only plausible understanding of what wrongful conduct Ericsson could be complaining about in Counts III and IV is that Wi-LAN attempted to license Ericsson's customers.  For the reasons explained above, nothing in the pleadings gives rise to a plausible inference that there has been anything *wrongful* in any such attempt.  Indeed, the only apparent basis for the claims asserted in Counts III and IV are the declaratory judgment claims of Counts I and II; to wit, that Defendants cannot license Ericsson's customers because they are already licensed through Ericsson.  Claims I and II fail for the reasons explained above, and therefore Counts III and IV fail for the same reasons and should be dismissed accordingly.

In particular, Counts III and IV fail to state a claim upon which relief can be granted because the facts as pled do not plausibly meet the elements of the respective claims.  *See, e.g.*, *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) ("To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed.").

A claim for tortious interference with a business relationship under Florida law requires: "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff."  *Minsurg Int'l,*

11

*Inc. v. Frontier Devices, Inc.*, No. 8:10-cv-1589-T-33EAJ, 2011 U.S. Dist. LEXIS 37962, at \*16-17 (M.D. Fla. 2011) (citing *Int'l Sales & Serv., Inc. v. Autral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001)).   To state a Florida Deceptive and Unfair Trade Practices Act claim, a party must allege: (1) a deceptive or unfair practice; (ii) causation; and (iii) actual damages. *See, e.g.*, *Minsurg*, 2011 U.S. Dist. LEXIS 37962, at \*15; *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009).   In this context, a practice is unfair if it "offends established public policy." *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1286 (S.D. Fla. 2013).

Ericsson states that Wi-LAN's allegations of patent infringement against Ericsson's alleged customers intentionally and unjustifiably (or unfairly) "interfered with Ericsson's business relationships with the Customers."   Compl. ¶ 95, 99.   Yet Ericsson pleads no facts suggesting that any such interference was intentional on Wi-LAN's part. *See Pharmerica, Inc. v. Eagle Healthcare, Inc.*, 2011 U.S. Dist. LEXIS 146928, \*12 (M.D. Fla. Sept. 30, 2011) ("To prove a claim for tortious interference under Florida law, a plaintiff must show that the defendant manifested a specific intent to interfere with the plaintiff's business relationship.").   Nor does Ericsson plead any facts suggesting Wi-LAN's letters to "the Customers" were unreasonable so as to be unfair or unjustifiable. *See Heritage Schooner Cruises, Inc. v. Cansler*, 2014 U.S. Dist. LEXIS 82345, \*10 (S.D. Fla. Jun. 17, 2014) (explaining that evaluation of the "unjustified" element of tortious interference requires "commonsense consideration of whether the conduct was 'sanctioned by the rules of the game'").

Likewise, with respect to Count IV, Ericsson merely pleads that "Wi-LAN's actions constitute unfair and/or deceptive acts," but does not identify any specific false statement, nor any fact that would, even if true, give rise to a plausible inference that Defendants have done

anything deceptive at all.  *See ClearPlay, Inc. v. Nissim, Corp.*, 2011 U.S. Dist. LEXIS 146861, *41-42 (S.D. Fla. Dec. 21, 2011) (explaining that because defendant Nissim's conduct was within its rights, "Nissim's subjective intent, whether or not correctly identified by Kabbaj, cannot deem such acts unlawful under FDUPTA").  And failing to identify a single specific statement, or a single specific claim of infringement by Defendants, Ericsson would need to plead facts that, if true, would mean that no customer of Ericsson could ever infringe the asserted patents under any circumstances.  This is because, as explained above, Ericsson's prayer for relief seeks a declaration that "Ericsson, its customers and its vendors have a license to the Siemens patents," Complaint at 17, and an injunction that "neither Wi-LAN nor anyone acting in concert with it shall assert or bring a claim against Ericsson, its customers or its vendors under the Siemens patents or any other patent covered by the Siemens License or the BelAir License," *id.* at 17-18.  Thus, Ericsson's claims as pled require not just a showing that some customer activity is licensed, but that all of it is.  As discussed above, Ericsson does not point to any facts that could possibly support such an inference.  In the end, Ericsson pleads no facts suggesting that Wi-LAN is doing anything other than attempting in good faith to license its patent rights, which cannot be said to be unfair, unjustifiable, or against public policy.[2]  Thus Counts III and IV of Ericsson's complaint contain, at most, a "formulaic recitation of the elements of a cause of action," which "will not do."  *Twombly*, 550 U.S. at 555; *see also*, *Iqbal*, 129 S. Ct. at 1949 ("threadbare recitation of the elements of a cause of action can no longer survive a motion to dismiss"); *Minsurg*, 2011 U.S. Dist. LEXIS 37962, at *15-17 (dismissing FDUTPA and Florida Tortious Interference claims under 12(b)(6) for providing mere "bare-bones recitation of the

---

[2]      To the contrary, as explained *infra*, such conduct is protected under both Federal Patent Law and the United States Constitution.

statutory elements," citing *Twombly* and *Iqbal*).  Counts III and IV should therefore be dismissed for failing to state a claim.

## V.      COUNTS III AND IV ARE PREEMPTED BY FEDERAL PATENT LAW

Beyond failing to state sufficient facts to give rise to a plausible claim for relief, Ericsson's Complaint on Counts III and IV also fails because those counts attempt to assert claims that have been preempted by federal patent law.  This is because a patent holder has a right to enforce its patents in good faith, for "Patents would be of little value if infringers of them could not be notified of the consequences of infringement . . . . Such action, considered by itself, cannot be said to be illegal." *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8 (1913); *see also*, *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are.").

In part for this reason, it is "well-established," that "State tort claims against a patent holder, including tortious interference claims, based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent." *800 Adept, Inc. v. Murex Securities, LTD.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008) (reversing M.D. Fla. and citing *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336-37) (Fed. Cir. 1998)).  This preemption applies with full force to Florida suits for tortious interference with business relations and alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  *See, e.g.*, *ClearPlay, Inc. v. Nissim Corp.*, No. 07-81170-CIV, 2011 U.S. Dist. LEXIS 99154 (S.D. Fla. Sept. 2, 2011) (finding ClearPlay's state law tortious interference claims and FDUTPA claims

based on Nissim's warnings of patent infringement to ClearPlay's business partners preempted by federal patent law absent a showing of bad faith).

Further, a showing of bad faith to overcome preemption has objective and subjective components; the allegations must be "objectively baseless" in the sense that no reasonable litigant could realistically expect success on the merits, and the patentee must demonstrate subjective bad faith such as through disregard for truth or falsity.  *See, e.g.*, *800 Adept*, 539 F.3d at 1370; *Mikohn*, 165 F.3d at 897; *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) (explaining that "a patentee has a right to inform potential infringers of a patent and potentially infringing activity unless the communication is made in bad faith," and reversing the district court because "GPI cannot show that Eran's assertions were objectively baseless"); *ClearPlay*, 2011 U.S. Dist. LEXIS 99154, at *33 (explaining that the "bad faith required to avoid patent preemption encompasses both objective and subjective considerations," but that the standard cannot be satisfied unless the allegations are "objectively baseless").  Ericsson has not pled any facts that would give rise to such an inference of bad faith on Defendants' part.

To avoid dismissal, a complaint alleging state law tortious interference and unfair trade practices based on assertion of patents must contain sufficient factual matter to state a facially plausible claim of bad faith.  *See, e.g.*, *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, No. 5:12-cv-366-Oc-10PRL, 2014 U.S. Dist. LEXIS 36009, *12-13 (M.D. Fla. Mar. 19, 2014) (dismissing state law unfair competition claims as preempted because the pleading did not show objective baselessness); *Wilco AG v. Packaging Techs. & Inspection LLC*, 615 F. Supp. 2d 320, 325 (D. Del. 2009) (dismissing defendant's state law counterclaims where the "defendant's pleading does not contain enough factual matter to suggest bad faith," under the Rule 8 standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)).

15

This bad faith exception to the preemption doctrine is dictated not exclusively by the Supremacy Clause but also by the First Amendment right to "petition the Government for a redress of grievances," U.S. Const. amend I, which also applies here, especially given that Ericsson is seeking an injunction that "neither Wi-LAN nor anyone acting in concert with it shall assert or bring a claim against Ericsson, its customers or its vendors under the Siemens patents or any other patent covered by the Siemens License or the BelAir License."  Complaint at 17-18. *See Globetrotter Software, Inc. v. Elan Comp. Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) ("Our decision to permit state-law tort liability for only objectively baseless allegations of infringement rests on both federal preemption and the First Amendment."); *ClearPlay, Inc. v. Nissim, Corp.*, 2011 U.S. Dist. LEXIS 99154, at *21 ("the higher bad faith standard for patent infringement allegations is rooted not only in the Supremacy Clause but also the First Amendment underpinnings of the Noerr-Pennington doctrine, which had been extended to pre-litigation communications").  The First Amendment provides immunity from liability for activities that precede a potential lawsuit, as long as those activities are not a "sham."  *See, e.g.*, *Atico Int'l, Inc. v. Luv N' Care, Ltd.*, No. 09-60397-CIV, 2009 U.S. Dist. LEXIS 73540, *5-6 (S.D. Fla. 2009) (citing *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965), and *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1558 (11th Cir. 1992)); *Hinson Elec. Contr. Co. v. AT&T Servs.*, 2014 U.S. Dist. LEXIS 36715 (M.D. Fla. Mar. 20, 2014) ("Legitimate threats of litigation, as much as actual litigation, may be protected by these guarantees," citing *McGuire Oil*, 958 F.2d at 1560); *Pods Enters. v. ABF Freight Sys.*, 2011 U.S. Dist. LEXIS 119657, *15 (M.D. Fla. 2011) ("pre-litigative activity such as sending cease-and-desist letters is also immunized").[3]  This doctrine applies to Florida tortious interference and FDUTPA claims, and

---

[3]      In the antitrust context, this is referred to as the *Noerr-Pennington* doctrine, but

requires dismissal of those claims when, as here, those claims are based on genuine (non-sham) pre-litigation activities. *Atico*, 2009 U.S. Dist. LEXIS 73540, at *17 (holding that because the defendant's accused pre-litigative and litigative activities were not shown to be a sham, the "First Amendment right to petition requires [12(b)(6)] dismissal of Plaintiff's claims for tortious interference with a business relationship and violations of the Florida Deceptive and Unfair Trade Practices Act").

Ericsson's pleadings do not state a facially plausible claim of bad faith (or sham litigation) sufficient to overcome federal preemption (or, to the extent it is also relevant, First Amendment protections). For tortious interference (Count III), Ericson claims that Wi-LAN "threatened the Customers by alleging patent infringement," so as to "intentionally and unjustifiably interfere with Ericsson's business relationships." Complaint ¶¶ 94, 95. Ericsson does not claim that Wi-LAN's allegations of patent infringement against the Customers were objectively baseless or made in subjective bad faith, much less plead facts establishing the facial

---

"when precluding non-antitrust claims based on allegations of pre-litigative and litigative activities," it is "arguably more precise to cite the First Amendment's right to petition." *Atico*, 2009 U.S. Dist. LEXIS 73540, at *7 n.2; *see also*, *McGuire Oil*, 958 F.2d at 1561-62 (First Amendment right to petition precludes unfair trade practices claim based on allegations of pre-litigative and litigative activities).

The *Wilco AG* court noted that the parties did not present arguments regarding whether "bad faith" is grounded in fraud so as to implicate the heightened pleading standard of Federal Rule of Civil Procedure 9(b), but found the pleadings insufficient under either Rule 8 or Rule 9. *Wilco AG*, 615 F. Supp. 2d at 325 n.2. Bad faith is akin to fraud or mistake, such that the pleader should be required to "state with particularity the circumstances constituting" bad faith. Fed. R. Civ. P. 9(b); *c.f.*, *Formula One Licensing v. Purple Interactive Ltd.*, No. C 00-2222, 2001 U.S. Dist. LEXIS 2968 (N.D. Cal. 2001) (plaintiff must "state with particularity facts necessary to plead the 'sham exception' to the *Noerr-Pennington* doctrine"); *ClearPlay*, 2011 U.S. Dist. LEXIS 99154, at *22 ("the 'objectively baseless' bad faith standard adopted by the Federal Circuit in *Globetrotter* is the same standard developed by the Supreme Court under the *Noerr-Pennington* doctrine"); *but see*, *GMP Techs., LLC v. Zicam, LLC*, No. 08 C 7077, 2009 U.S.

plausibility of bad faith.   With respect to its FDUTPA claim (Count IV), Ericsson makes a conclusory allegation that Wi-LAN "intentionally and unfairly interfered with Ericsson's business relationships with Customers," and "did so in bad faith, with knowledge that Ericsson already had a license to the Siemens Patents by virtue of the Siemens Agreement . . . the PCRA, the Judgment and the BelAir License."   Complaint ¶¶ 94, 95.   Such threadbare recitals do not satisfy the standard of Rule 8.   *See Matthews Int'l Corp. v. BioSafe Eng., LLC*, 695 F.3d 1322, 1333 n.5 (Fed. Cir. 2012) (affirming 12(b)(6) dismissal of state law claims because Matthews "was required to do more than make bald assertions that Biosafe acted in 'bad faith,'" citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Moreover, to sufficiently plead bad faith so as to avoid preemption, Ericsson would have had to make a facially plausible allegation that Wi-LAN and NMS know that a license extending to Ericsson's customers protects all of the actual infringement Defendants now accuse, and that any argument to the contrary is objectively baseless and made in subjective bad faith based on specific facts and law.[4]   Ericsson has not made such a claim, nor can Ericsson plausibly do so.

---

Dist. LEXIS 115523 (N.D. Ill. 2009).   In any event, the court need not decide the question, because as in *Wilco AG*, Ericsson's allegations fail under both standards.

[4]      To whatever extent Ericsson would attempt to plead bad faith with regard to the BelAir license based on its allegation that Wi-LAN and NMS's actions are inconsistent with the judgment in Case No. 12-23569-CIV-Middlebrooks/Brannon, while Ericsson has utterly failed to allege that Wi-LAN's actions violate such judgment, such an allegation should also fail because Wi-LAN's conduct can hardly constitute bad faith when another duly appointed federal judge sitting in a court of competent jurisdiction has also considered the matter, and reached the opposite conclusion to that of this Court, to wit that "Wi-LAN is not obligated to grant Defendants such a license to the patents-in-suit," Case No. 6:10-cv-00521-LED, ECF No. 410 (E.D. Tex. June 4, 2013), and when both decisions are currently pending on appeal.

## VI.    ERICSSON'S "SHOTGUN PLEADINGS" FAIL TO APPRISE DEFENDANTS OF FACTS SUPPORTING A PLAUSIBLE CLAIM FOR RELIEF

And while the numerous substantive shortcomings catalogued above are more than sufficient reason to dismiss Ericsson's Complaint, the Complaint should also be dismissed because it uses an improper "shotgun pleading" approach, which has been "condemned by the Eleventh Circuit and Fed R. Civ. P. 8 and 10." *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, No. 5:12-cv-366-Oc-10PRL, 2014 U.S. Dist. LEXIS 36009, *12-13 (M.D. Fla. Mar. 19, 2014). This "shotgun pleading" approach is further evidence that there is no clear statement Ericsson can make as to why it has any cognizable rights at stake in this Complaint at all, and is in and of itself a sufficient basis to dismiss. *Id.*, at *13 ("Such defective pleading alone provides sufficient reason for the Court to dismiss the Defendants' unfair competition and Lanham Act counterclaims.").

A "shotgun complaint" is one that, like Ericsson's, "contains several counts, each one incorporating by reference the allegations of its predecessors," such that these counts "contain irrelevant factual allegations and legal conclusions." *Id.* at *12 (quoting *Strategic Income Fund, LLC v. Spear, Leeds, & Kellogg Corp.*, 305 F. 3d 1293, 1295 (11th Cir. 2002)). This requires the court to undertake the onerous task of sifting out the irrelevancies. *See, e.g.*, *Strategic Income*, 305 F.3d at 1295; *Pellentier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) ("Zweifel and the district court had to sift through the facts presented and decide for themselves which were material to the particular cause of action asserted, a difficult and laborious task indeed."). The Eleventh Circuit has addressed the problem of shotgun pleading "on numerous occasions," and "always with great dismay;" indeed, "the aggregate negative effects of shotgun pleadings on trial courts have been noted with great concern." *Strategic Income*, 305 F.3d at 1295, n.10 (citing,

e.g., *Bryne v. Nezhat*, 261 F.3d 1075, 1128-34 (11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice.  The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard.")).

Ericsson's Amended Complaint is a quintessential shotgun pleading.  Paragraph 78, for example "incorporate[s] by reference" paragraphs 1 through 77, which contain voluminous factual assertions and legal conclusions that are not expressly tied to any of the four counts of the Complaint.  Ericsson makes no effort to explain how, for example, the factual history of the LTE Litigation (¶¶ 30-36), or allegations of a justiciable controversy with respect to Counts I and II (¶¶ 84, 90) are relevant to Count III, instead opting for wholesale incorporation by reference.  Indeed, the first paragraph of each count incorporates everything that came before, including each prior count of the complaint itself, with no explanation of how, for instance, Count II gives rise to Count III.  This alone provides a basis for dismissal of Ericsson's complaint.  *Strategic Income*, 305 F.3d at 1295-1297 (dismissing shotgun pleadings for failure to state a claim).  The Complaint should be dismissed because Ericsson should not be allowed to force Defendants to answer 77 paragraphs of allegations that are not expressly tied to a single count of the complaint, particularly when no possible combination of any of those paragraphs presents itself whereby Ericsson would be entitled to any of the relief it seeks.

**VII.    CONCLUSION**

For each of the foregoing reasons, Ericsson's Complaint should be dismissed.

Dated:  July 7, 2014

Respectfully submitted:

*Attorneys for Defendants*

By:  _____  s/ Curtis Carlson
Curtis Carlson
Florida Bar ID #236640
Carlson@carlson-law.net
CARLSON & LEWITTES, PA
One Southeast Third Avenue, Suite 1200
Miami, FL  33131
Phone:  (305) 372-9700
Fax:  (305) 372-8265


Matthew D. Powers (Of counsel, *pro hac vice* application forthcoming)
Paul T. Ehrlich (Of counsel, *pro hac vice* application forthcoming)
Aaron M. Nathan (Of counsel, *pro hac vice* application forthcoming)
Andrew Michaels (Of counsel, *pro hac vice* application forthcoming)
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065
Phone:  (650) 802-6000
Fax:  (650) 802-6001
Email:
matthew.powers@tensegritylawgroup.com
paul.ehrlich@tensegritylawgroup.com
aaron.nathan@tensegritylawgroup.com
andrew.michaels@tensegritylawgroup.com

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that on July 7, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record listed below either via transmitting of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jacob K. Baron
Jacob W. S. Schneider
Joshua C. Krumholz
Mark T. Goracke
Zachary A. Weinman
Holland & Knight, LLP
10 St. James Avenue
Boston, MA 02116
jacob.baron@hklaw.com
jacob.schneider@hklaw.com
joshua.krumholz@hklaw.com
mark.goracke@hklaw.com
zachary.weinman@hklaw.com

George E. Schulz , Jr.
Holland & Knight LLP
50 North Laura Street
Suite 3900
Jacksonville, FL 32202
buddy.schulz@hklaw.com

                            By:      <u>   s/ Curtis Carlson  </u>