**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

───────────────────────────────────

TELEFONAKTIEBOLAGET LM
ERICSSON and ERICSSON INC.,

      Plaintiffs and Counterclaim Defendants,          Civil Action No. 14-CV-21854-DMM

v.

WI-LAN USA, INC., WI-LAN INC. and          **JURY TRIAL DEMANDED**
NETWORK MANAGEMENT
SOLUTIONS, LLC,

      Defendants and Counterclaim Plaintiffs.

───────────────────────────────────

WI-LAN USA, INC., WI-LAN INC. and
NETWORK MANAGEMENT
SOLUTIONS, LLC,

      Counterclaim Plaintiffs,

v.

VERIZON COMMUNICATIONS, INC.,
CELLCO PARTNERSHIP d.b.a. VERIZON
WIRELESS,
AT&T INC.,
AT&T MOBILITY LLC,
SPRINT CORPORATION,
SPRINT SPECTRUM L.P., and
T-MOBILE USA, INC.

      Counterclaim Defendants.

───────────────────────────────────

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM TO**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants Wi-LAN USA, Inc., Wi-LAN, Inc., and Network Management Solutions,

LLC (collectively, "Wi-LAN") hereby file their Answer, Affirmative Defenses, and

Counterclaim in response to the Second Amended Complaint of Plaintiffs Telefonaktiebolaget LM Ericsson and Ericsson Inc. (collectively, "Ericsson") and state as follows:

**PARTIES**

1.      Admitted, on information and belief.

2.      Admitted, on information and belief.

3.      Wi-LAN admits that Wi-LAN, Inc. is a corporation organized and existing under the laws of the country of Canada but denies that its current principal place of business is at 11 Holland Ave., Suite 608, Ottawa, Ontario, K1Y 4S1 Canada.

4.      Wi-LAN admits that Wi-LAN USA, Inc. is a corporation organized and existing under the laws of the State of Florida but denies that its current principal place of business is at 175 S.W. 7th Street, No. 1803, Miami, Florida 33130.

5.      Wi-LAN admits that Network Management Solutions, LLC is a corporation organized and existing under the laws of the State of Florida but denies that its current principal place of business is at 175 S.W. 7th Street, No. 1803, Miami, Florida 33130.

**JURISDICTION AND VENUE**

6.      Wi-LAN admits that this action purports to base jurisdiction on 28 U.S.C. §§ 1331, 1332(a)(3), 1332(c), 1338(a), 1367, 2201, and 2202.  Wi-LAN admits that Wi-LAN USA, Inc. and Network Management Solutions, LLC reside in this District and are subject to the Court's personal jurisdiction.  Wi-LAN admits that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(3), 1332(c), and 1367, except that Ericsson lacks standing with respect to Counts I and IV of its Second Amended Complaint.  Wi-LAN denies, including without limitation based on the Court's Order denying Wi-LAN's motion to dismiss, that any count of the Amended Complaint is based on 28 U.S.C. §§ 1331 or 1338.  Wi-LAN denies the remaining allegations of this paragraph.

7.      Admitted.

8.      Admitted.

## FACTUAL BACKGROUND

### The "Siemens License"

9.      Wi-LAN admits that a document which appears to be referred to by Ericsson as the "Siemens License" in its Second Amended Complaint, and which was provided to Wi-LAN by counsel for Ericsson, appears on its face to be signed by Siemens Aktiengesellschaft on July 10, 1997 and by Telefonaktiebolaget LM Ericsson on July 16, 1997, respectively.  Wi-LAN lacks sufficient knowledge or information to admit or deny the remaining allegations in this paragraph and on that basis denies them.

10.      Wi-LAN admits that the document referred to as the "Siemens License" includes language purporting to grant each party named in that document a set of defined rights.  Wi-LAN otherwise denies remaining allegations in this paragraph to the extent they purport to expand or alter the meaning of any such "rights."  Wi-LAN lacks sufficient information with respect to the validity and enforceability of the Siemens License and denies the remaining allegations on that basis.

11.      Wi-LAN admits that the Siemens License purports to allow Ericsson to extend certain limited rights to its vendees that are narrower than those Ericsson asserts in this action. Wi-LAN admits that the Siemens License purports to grant certain limited rights to Ericsson's subsidiaries that are narrower than those Ericsson appears to assert in this action.  Wi-LAN denies the remainder of the allegations in this paragraph.

12.      Wi-LAN admits that the document referred to as the "Siemens License" purports to recite an effective term and denies the remaining allegations to the extent they are inconsistent with or expand upon the terms of the document itself.  Wi-LAN lacks sufficient knowledge and

information regarding the validity and enforceability of the Siemens License and thus denies the allegations of this paragraph.

## The Siemens Patents

13.     Wi-LAN admits that Network Management Solutions, LLC is the assignee of the "Siemens Patents."

14.     Wi-LAN admits that as the assignee of the Siemens Patents, Wi-LAN's rights with respect to the Siemens Patents are subject to prior valid and enforceable licenses granted by Siemens.  Wi-LAN lacks specific knowledge and information regarding the validity and enforceability of the Siemens License and therefore denies the allegations of this paragraph on this basis.  Wi-LAN further denies that the Siemens License purports to grant rights that would limit Wi-LAN's rights to the Siemens Patents to the extent alleged by Ericsson.

15.     Denied.

## The '213 Patent

16.     Wi-LAN admits that according to the assignment record available from the U.S. Patent and Trademark Office, both inventors of the '213 patent appear to have assigned their interests and rights in the application of the '213 patent to Siemens as of July 10, 2000, and that Siemens purports to have owned the application of the '213 patent as of July 10, 2000, based on the assignment record.

17.     Admitted.

18.     Admitted.

19.     Wi-LAN admits that on information and belief, the '213 patent appears to fall within certain terms of the document referred to as the "Siemens License."  Wi-LAN otherwise denies the allegations of this paragraph to the extent that the allegations plead or imply more than the terms of the document itself.  Wi-LAN lacks specific knowledge and information regarding

the validity and enforceability of the Siemens License and therefore denies the remaining allegations of this paragraph on this basis.

### The '968 Patent

20.     Wi-LAN admits that according to the assignment record available from the U.S. Patent and Trademark Office, the inventor of the '968 patent appears to have assigned the interests and rights in the application of the '968 patent to Siemens as of July 26, 1999, and that Siemens purports to own the application of the '968 patent as of July 26, 1999, based on the assignment record.  Wi-LAN lacks sufficient knowledge and information to admit and deny the remaining allegations of this paragraph and on that basis denies them.

21.     Admitted.

22.     Admitted.

23.     Wi-LAN admits that on information and belief, the '968 patent appears to fall within certain terms of the document referred to as the "Siemens License."  Wi-LAN otherwise denies the allegations of this paragraph to the extent that the allegations plead or imply more than the terms of the document itself.  Wi-LAN lacks specific knowledge and information regarding the validity and enforceability of the Siemens License and therefore denies the remaining allegations of this paragraph on this basis.

### The '099 Patent

24.     Wi-LAN admits that according to the assignment record available from the U.S. Patent and Trademark Office, the inventor of the '099 patent appears to have assigned the interests and rights in the application of the '099 patent to Siemens as of March 30, 1999, and that Siemens purports to own the application of the '099 patent as of March 30, 1999, based on the assignment record.

25.     Admitted.

26.     Admitted.

27.     Wi-LAN admits that on information and belief, the '099 patent appears to fall within certain terms of the document referred to as the "Siemens License." Wi-LAN otherwise denies the allegations of this paragraph to the extent that the allegations plead or imply more than the terms of the document itself. Wi-LAN lacks specific knowledge and information regarding the validity and enforceability of the Siemens License and therefore denies the remaining allegations of this paragraph on this basis.

**The '688 Patent**

28.     Wi-LAN admits that according to the assignment record available from the U.S. Patent and Trademark Office, both inventors of the '688 patent appear to have assigned their interests and rights in the application of the '688 patent to Siemens as of October 30, 1998, and that Siemens purports to own the application of the '688 patent as of October 30, 1998, based on the assignment record.

29.     Admitted.

30.     Admitted.

31.     Wi-LAN admits that on information and belief, the '688 patent appears to fall within certain terms of the document referred to as the "Siemens License." Wi-LAN otherwise denies the allegations of this paragraph to the extent that the allegations plead or imply more than the terms of the document itself. Wi-LAN lacks specific knowledge and information regarding the validity and enforceability of the Siemens License and therefore denies the remaining allegations of this paragraph on this basis.

**Cincinnati Bell Wireless LLC**

32.     Wi-LAN admits that it contacted Cincinnati Bell Inc. on February 13, 2013, discussing a potential licensing partnership with Cincinnati Bell Inc. and informing Cincinnati

Bell Inc. that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [Cincinnati Bell Inc.'s] products and services, [Wi-LAN] believe[s] that Cincinnati Bell Inc. requires a license to certain patents related to network alarm management and lawful intercept technologies," and "[i]n particular, [Wi-LAN] believe[s] that Cincinnati Bell Inc. requires a license to at least US patents #6,351,213, #6,553,099 and #6,728,688." Wi-LAN also admits that it proposed to "present [the] infringement analysis in a face-to-face meeting at [Cincinnati Bell Inc.'s] offices or another convenient location, in order to explain [its] findings and licensing approach in more details." Wi-LAN otherwise denies the remaining allegations of this paragraph to the extent they are meant to alter or expand the meaning of the document.

33.    Admitted, on information and belief.

34.    Wi-LAN admits that in a related litigation filed by Wi-LAN against Ericsson in the Southern District of Florida, *Wi-LAN USA, Inc. and Wi-LAN, Inc. v. Telefonaktiebolaget L.M. Ericsson and Ericsson Inc.*, Case No. 12-CV-23569-DMM (S.D. Fla.) (the "LTE Litigation"), Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be a letter dated April 15, 2014, from CBW's counsel to Ericsson requesting Ericsson "assume responsibility for resolving these [Wi-LAN's] infringement claims with respect to all products provided to CBW by Ericsson" pursuant to "the May 22, 2003 Master Purchase Agreement between Ericsson, Inc. and CBW." Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**East Kentucky Network LLC**

35.    Wi-LAN admits that it contacted East Kentucky Network, LLC ("East Kentucky") on March 20, 2013, discussing a potential licensing partnership with East Kentucky and informing East Kentucky that "[b]ased on [Wi-LAN's] preliminary assessment of publicly

available information regarding [East Kentucky's] products and services, [Wi-LAN] believe[s] that Appalachian Wireless [of East Kentucky] requires a license to certain patents related to network alarm management and lawful intercept technologies," and "[i]n particular, [Wi-LAN] believe[s] that Appalachian Wireless requires a license to at least US patents #6,351,213, #6,728,688 and #6,553,099," because at least one or more claims of these patents are "infringed by Appalachian Wireless' wireless products and services." Wi-LAN also admits that it proposed to "present [the] infringement analysis in a face-to-face meeting at [East Kentucky's] offices or another convenient location, in order to explain [its] findings and licensing approach in more details." Wi-LAN otherwise denies the remaining allegations of this paragraph to the extent they are meant to alter or expand the meaning of the document.

36.     Admitted, on information and belief.

37.     Wi-LAN admits that in the LTE litigation, Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be an email dated April 2, 2013 from Mr. Gerald Robinette of East Kentucky to Ericsson inquiring "if Ericsson or previously Nortel has had any dealings with WiLAN, purchased any software from WiLAN or even know of the claims their [sic] making," and stating that East Kentucky's counsel "may be calling on someone at Ericsson." Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**Cellular South, Inc.**

38.     Wi-LAN admits that it contacted C Spire Wireless ("C Spire") on February 13, 2013, discussing a potential licensing partnership with C Spire and informing C Spire that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [C Spire's] products and services, [Wi-LAN] believe[s] that C Spire Wireless requires a license to

certain patents related to network alarm management and lawful intercept technologies," and "[i]n particular, [Wi-LAN] believe[s] that C Spire Wireless requires a license to at least US patents #6,351,213, #6,553,099 and #6,728,688."   Wi-LAN also admits that it proposed to "present [the] infringement analysis in a face-to-face meeting at [C Spire's] offices or another convenient location, in order to explain [its] findings and licensing approach in more details." Wi-LAN otherwise denies the remaining allegations of this paragraph to the extent they are meant to alter or expand the meaning of the document.

39.     Admitted, on information and belief.

40.     Wi-LAN admits that in the LTE litigation, Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be an email dated April 25, 2013 from Mr. Eric Hollingsworth of C Spire to Ericsson inquiring whether Ericsson has "already addressed patent infringement cases/requests from . . . 'WiLAN and NMS', that would indemnify operators such as CS [C Spire]."   Wi-LAN further admits that its licensing discussion with C Spire relating to C Spire's products and services continued through February of 2014 and states that the discussion led to a license agreement entered in and executed by Wi-LAN and C Spire in April of 2014.   Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**Carolina West Wireless, Inc.**

41.     Wi-LAN admits that it contacted Carolina West Wireless, Inc. ("Carolina West") on April 18, 2013, discussing a potential licensing partnership with Carolina West and informing Carolina West that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [Carolina West's] products and services, [Wi-LAN] believe[s] that Carolina West Wireless requires a license to certain patents related to network alarm

management and lawful intercept technologies," and "[i]n particular, [Wi-LAN] believe[s] that Carolina West Wireless requires a license to at least US patents #6,351,213, #6,728,688 and #6,553,099," because at least one or more claims of these patents are "infringed by Carolina West Wireless' wireless products and services."   Wi-LAN also admits that it proposed to "meet . . . to present [the] infringement analysis and to provide further details of [Wi-LAN's] licensing approach."   Wi-LAN otherwise denies the remaining allegations of this paragraph to the extent they are meant to alter or expand the meaning of the document.

42.     Admitted, on information and belief.

43.     Wi-LAN admits that in the LTE litigation, Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be an email dated June 5, 2013 from Carolina West's counsel to Ericsson's counsel seeking confirmation that "Ericsson's response with regard to the claims asserted by WiLAN against Carolina West is the same as it was with regard to the claims against C Spire and Appalachian [of East Kentucky]."   Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**Cricket Wireless, LLC**

44.     Wi-LAN admits that it initially contacted Cricket Communication Inc. ("Cricket") on Oct. 18, 2012, discussing a potential licensing partnership with Cricket and informing Cricket that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [Cricket's] products and services, [Wi-LAN] believe[s] that Cricket Communications requires a license to certain Wi-LAN patents related to network alarm management and unlawful [sic] intercept technologies," and that it proposed to "present [the] infringement analysis in a face-to-face meeting at [Cricket's] offices or another convenient location, in order to explain [its]

findings and licensing approach in more details."  Wi-LAN further admits that on February 26, 2013, prior to the scheduled face-to-face meeting with Cricket, Wi-LAN forwarded two claim charts to Cricket, entitled "USP 6,351,213 and 3GPP Fault Management Standards" and "USP 6,553,099 and 3GPP Security Standards" to facilitate the licensing discussion.  Wi-LAN otherwise denies the remaining allegations of this paragraph to the extent they are meant to alter or expand the meaning of the communications between Wi-LAN and Cricket.

45.   Admitted, on information and belief.

46.   Wi-LAN admits that in the LTE litigation, Ericsson filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be a letter dated March 22, 2013 from Mr. Charles Evendorff of Cricket to Ericsson, entitled "Re: Claim Notice under System Equipment Purchase Agreement dated August 28, 2000, and Amended and Restated System Equipment Purchase Agreement dated December 23, 2002, and System Equipment Purchase Agreement dated October 11, 2005, and System Equipment Purchase Agreement dated June 11, 20007 and any Amendments thereto (the 'Agreements')," requesting for "defense and indemnification pursuant to Sections 15.2 and 13.1 of the Agreements."  Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**Clearwire Corporation**

47.   Wi-LAN admits that it contacted Clearwire Inc. ("Clearwire") on March 13, 2013, discussing a potential licensing partnership with Clearwire and informing Clearwire that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [Clearwire's] products and services, [Wi-LAN] believe[s] that Clearwire requires a license to certain patents

11

related to network alarm management and lawful intercept technologies," and "[i]n particular, [Wi-LAN] believe[s] that Clearwire requires a license to at least US patents #6,351,213, #6,728,688 and #6,553,099," because at least one or more claims of these patents are "infringed by Clearwire's wireless products and services."  Wi-LAN also admits that it proposed to "present [the] infringement analysis in a face-to-face meeting at [Clearwire's] offices or another convenient location, in order to explain [its] findings and licensing approach in more details." Wi-LAN otherwise denies the remaining allegations of this paragraph to the extent they are meant to alter or expand the meaning of the document.

48.     Admitted, on information and belief.

49.     Wi-LAN admits that in the LTE litigation, Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be a letter dated May 7, 2013 from Mr. Ross D. Vincenti of Clearwire to Ericsson, entitled "Re: Managed Services Agreement between Ericsson Inc. and Sprint/United Management Company dated July 7, 2009 and Additional Services Order with Clear Wireless LLC dated May 16, 2011," requesting that "Ericsson promptly acknowledge receipt of this notice and correspondingly confirm in writing to Clearwire that Ericsson will, consistent with its obligations under the Agreement [dated July 7, 2009] undertake the defense of the WiLAN claim, and indemnify Clearwire as provided under the Agreement [dated July 7, 2009]."  Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**General Communications, Inc.**

50.     Wi-LAN admits that it contacted General Communication, Inc. ("GCI") on March 13, 2013, discussing a potential licensing partnership with GCI and informing GCI that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [GCI's]

products and services, [Wi-LAN] believe[s] that General Communication, Inc. requires a license to certain patents related to network alarm management and lawful intercept technologies," and "[i]n particular, [Wi-LAN] believe[s] that General Communication, Inc. requires a license to at least US patents #6,351,213, #6,728,688 and #6,553,099," because at least one or more claims of these patents are "infringed by General Communication, Inc.'s wireless products and services." Wi-LAN also admits that it proposed to "meet . . . to present [the] infringement analysis and to provide further details of [Wi-LAN's] licensing approach." Wi-LAN otherwise denies the remaining allegations of this paragraph to whatever extent they are meant to alter or expand the meaning of the document.

51.     Admitted, on information and belief.

52.     Wi-LAN admits that in the LTE litigation, Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be an email dated September 16, 2013 from Ms. Tina M. Pidgeon of GCI to Ericsson, "represent[ing] GCI's notice and demand for defense and indemnification relative to WiLAN's claims," "tender[ing] this matter to Ericsson for defense and indemnification for all WiLAN's claims that relate to Ericsson products," and "seek[ing] reimbursement from Ericsson for any and all costs and attorney's fees related to the defense of this matter." Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**Alaska Communications Systems Group, Inc.**

53.     Wi-LAN admits that it contacted Alaska Communications Systems Group, Inc. ("ACS") on March 20, 2013, discussing a potential licensing partnership with ACS and informing ACS that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [ACS'] products and services, [Wi-LAN] believe[s] that Alaska

Communications requires a license to certain patents related to network alarm management and lawful intercept technologies," and "[i]n particular, [Wi-LAN] believe[s] that Alaska Communications requires a license to at least US patents #6,351,213, #6,728,688 and #6,553,099," because at least one or more claims of these patents are "infringed by Alaska Communications' wireless products and services." Wi-LAN also admits that it proposed to "present [the] infringement analysis in a face-to-face meeting at [ACS'] offices or another convenient location, in order to explain [its] findings and licensing approach in more details." Wi-LAN otherwise denies the remaining allegations of this paragraph to whatever extent they are meant to alter or expand the meaning of the document.

54.     Admitted, on information and belief.

55.     Wi-LAN admits that in the LTE litigation, Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be a letter dated May 1, 2013 from Ms. Martha Beckwith of ACS forwarding Wi-LAN's communications to Ericsson for review "so that [Ericsson has] an opportunity to determine whether this potential issue will have an impact on Ericsson and the path forward." Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**AT&T, Inc.**

56.     Wi-LAN admits that it contacted AT&T Inc. ("AT&T") on February 27, 2013, discussing a potential licensing partnership with AT&T and informing AT&T that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [AT&T's] products and services, [Wi-LAN] believe[s] that AT&T Inc. requires a license to certain patents related to network alarm management and lawful intercept technologies," and "[i]n particular, [Wi-LAN] believe[s] that AT&T requires a license to at least US patents #6,351,213, #6,728,688

and #6,553,099," because at least one or more claims of these patents are "infringed by AT&T Inc.'s wireless products and services." Wi-LAN otherwise denies the remaining allegations of this paragraph to the extent they are meant to alter or expand the meaning of the document.

57. Admitted, on information and belief.

58. Wi-LAN admits that in the LTE litigation, Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be a letter dated August 23, 2013 from AT&T's counsel to Ericsson, "tender[ing] the analysis and defense of the allegations contained in the WiLAN letter to Ericsson, at least as they may relate to Ericsson Products," pursuant to the Master Sales Agreement entered between the parties dated October 31, 2001 and seeking "a formal acceptance by Ericsson of its defense and indemnity to AT&T and its customers." Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**T-Mobile US, Inc.**

59. Wi-LAN admits that it contacted T-Mobile USA Inc. ("T-Mobile") on February 14, 2013, discussing a potential licensing partnership with T-Mobile and informing T-Mobile that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [T-Mobile's] products and services, [Wi-LAN] believe[s] that T-Mobile USA requires a license to certain patents related to network alarm management and lawful intercept technologies," and "[i]n particular, [Wi-LAN] believe[s] that T-Mobile USA requires a license to at least US patents #6,351,213, #6,553,099 and #6,728,688," because at least one or more claims of these patents are "infringed by T-Mobile USA's wireless products and services." Wi-LAN otherwise denies the remaining allegations of this paragraph to whatever extent they are meant to alter or expand the meaning of the document.

60.     Admitted, on information and belief.

61.     Wi-LAN admits that in the LTE litigation, Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be a letter dated February 27, 2014 from Mr. Gerreth Sarosi of T-Mobile to Ericsson requesting Ericsson "indemnify, defend and hold harmless T-Mobile with regard to all costs and expenses incurred and to be incurred by [T-Mobile] with respect to this [Wi-LAN] matter" pursuant to various agreements between Ericsson and entities of T-Mobile and seeking "prompt acceptance of Ericsson's indemnification and defense obligations."  Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

### Sprint Nextel Corporation

62.     Wi-LAN admits that it contacted Sprint Nextel Corporation ("Sprint") on October 18, 2012, discussing a potential licensing partnership with Sprint, informing Sprint that "[b]ased on [Wi-LAN's] preliminary assessment of publicly available information regarding [Sprint's] products and services, [Wi-LAN] believe[s] that Sprint Nextel Corporation requires a license to certain patents related to network alarm management and unlawful [sic] intercept technologies," and proposing to "present [the] infringement analysis in a face-to-face meeting at [Sprint's] offices or another convenient location, in order to explain [its] findings and licensing approach in more details."  Wi-LAN otherwise denies the remaining allegations of this paragraph to whatever extent they are meant to alter or expand the meaning of the document.

63.     Admitted, on information and belief.

64.     Wi-LAN admits that in the LTE litigation, Ericsson has filed with this Court a document as an exhibit to its now-withdrawn Motion for further Relief that purports to be an email dated May 15, 2014 from Mr. Steve J. Funk of Sprint forwarding Wi-LAN's licensing

letters to Clearwire and Sprint to Ericsson and stating that Sprint "will formally confirm [its] request for indemnification shortly."  Wi-LAN lacks sufficient knowledge and information to admit or deny the remaining allegations and therefore denies them.

**Communications Between the Parties**

65.    Wi-LAN admits that on July 24, 2013, Dunstan wrote a letter to Wilson "to inform [Wi-LAN] that Ericsson is licensed to each of [the four Siemens Patents] pursuant to an agreement with Siemens" and stated in the letter that "Wi-LAN cannot maintain a credible infringement claim for these patents against any Ericsson customers to the extent that such claim implicates Ericsson products or services."  Wi-LAN denies any allegations to the extent that they contradict, or plead more than the forgoing admissions.

66.    Wi-LAN admits that Dunstan wrote another letter on November 5, 2013 to Wilson and stated that he noticed "Wi-LAN has commenced a patent assertion campaign against Ericsson's customer General Communications, Inc. ('GCI')," and that "[a]s [he] explained to [Wilson] in [the] letter of July 24, 2013, Ericsson is licensed to each of these [Siemens Patents] pursuant to an agreement with Siemens.  As such, Wi-LAN cannot maintain a credible infringement claim for these patents against GCI."  Wi-LAN admits that it contacted GCI for licensing discussions and that Wilson had not responded to Dunstan's July 24, 2013 letter yet at that time.  Wi-LAN denies any allegations to the extent that they contradict, or plead more than the forgoing admissions.

67.    Wi-LAN admits that Dunstan sent a letter on December 13, 2013 to Wilson and stated that he noticed "Wi-LAN has contacted Alaska Communications Systems (ACS) about taking a license U.S. Patent Nos. 6,351,213; 6,728,688; and 6,553,099," and that "Ericsson is licensed to each of these patents pursuant to a patent cross-license agreement with Siemens.  As

such, Wi-LAN cannot maintain a credible infringement claim for these patents against Ericsson's customer ACS." Wi-LAN admits that it contacted ACS on March 20, 2013 for licensing discussions relating to certain Wi-LAN patents, including U.S. Patent Nos. 6,351,213; 6,728,688; and 6,553,099, and that Wilson had not responded to Dunstan's prior letters. Wi-LAN denies any allegations to the extent that they contradict, or plead more than the forgoing admissions.

68. Wi-LAN admits that Wilson responded to Dunstan on December 18, 2013, acknowledging "receipt of [Dunstan's] letters of July 24, 2013, November 5, 2013 and December 13, 2013," and stating that "WiLAN strongly disagrees with mischaracterizations in [Dunstan's three] letters." Wi-LAN also admits that Wilson stated in the December 18, 2013 response letter "Wi-LAN has not seen any license agreement between Siemens and Ericsson and therefore does not acquiesce to its existence or, if it exists, what the license may or may not cover. Regardless, even if a license exists, we do not agree that such license would provide rights to Ericsson's customers against infringement of the Patents" because at least "Ericsson's products do not embody the claimed technology of the ['213, '918, '968 and '099] Patents." Wi-LAN further admits that Wilson explained in the December 18, 2013 letter that "Ericsson has taken an overly broad position that Ericsson's customers are completely immunized from any claim of infringement, regardless of what the infringing activity may be, simply because Ericsson's customers may have a license to the Patents." Wi-LAN denies any allegations to the extent that they contradict, or plead more than the forgoing admissions.

69. Wi-LAN admits that in his February 19, 2014 letter, Dunstan demanded a confirmation from Wi-LAN that "Wi-LAN's theory of infringement by Ericsson's customers does not implicate any Ericsson product or service." Wi-LAN denies that Wi-LAN is obligated

in any way to make such sweeping confirmation or that Ericsson is entitled to any such broad confirmation from Wi-LAN.  Wi-LAN admits that it did not respond to the letter pending further investigation of the matter.

70.     Wi-LAN admits that in his April 11, 2014 letter, Dunstan stated that the final judgment of this Court in the LTE litigation "determined that Ericsson was entitled to a license under the terms of Wi-LAN's agreement with BelAir, Inc." and that "the asserted patents [by Wi-LAN against various wireless carriers] also are covered by the terms of that agreement."  Wi-LAN also admits that Dunstan enclosed a redacted copy of the document referred to by Ericsson as the Siemens License and claimed that "[t]he patents [Wi-LAN] ha[s] asserted against Ericsson's customers . . . are subject to the license agreement." Wi-LAN further admits that Dunstan in the April 11, 2014 letter also requested that Wi-LAN "confirm by April 25, 2014 that [Wi-LAN] will no longer assert any patents covered by the Siemens License against any Ericsson customers, including U.S. Patent No. 6,351,213, U.S. Patent No. 6,728,688 and U.S. Patent No. 6,533,099" or that Wi-LAN alternatively "confirm by that date that any such assertion does not in any way implicate any Ericsson product or equipment, and that [Wi-LAN] similarly will advise Ericsson's customers that [Wi-LAN's] claims do not in any way implicate Ericsson's products or equipment."   Wi-LAN denies the merits of such assertions, statements and confirmations and that Wi-LAN is obligated in any way to make such sweeping confirmations or Ericsson is entitled to any of such broad confirmations from Wi-LAN.

71.     Wi-LAN admits that on April 25, 2014, Wilson responded to Dunstan's April 11, 2014, letter by email, stating that "[t]hank you for your letter.  WiLAN disagrees with most if not all of your letter and views some of its contents as egregious and overreaching.   We are reviewing the matter and will let you know once we have a further reply."

## COUNT I

## DECLARATORY JUDGMENT ON BREACH OF SIEMENS LICENSE

72.     Wi-LAN restates and incorporates by reference its answers to the allegations of paragraphs 1 through 71.

73.     Paragraph 73 states a legal conclusion to which no response is required. To the extent a response is deemed necessary, Wi-LAN lacks sufficient knowledge and information to admit or deny the allegations in this paragraph and therefore denies them.

74.     Wi-LAN admits that to the extent the Siemens License is valid and enforceable it purports to grant certain rights that would operate as defenses to patent infringement with respect to certain Ericsson products under certain circumstances.   However, Ericsson's allegation is overbroad and therefore incorrect and Wi-LAN denies on that basis.

75.     Wi-LAN admits that on information and belief, each of the Siemens Patents appear to fall within the certain terms of the document referred to as the "Siemens License."  Wi-LAN otherwise denies the allegations of this paragraph to the extent that the allegations plead or imply more than the terms of the document itself.   Wi-LAN lacks specific knowledge and information regarding the validity and enforceability of the Siemens License and therefore denies the remaining allegations of this paragraph on this basis.

76.     Wi-LAN admits that as the assignee of the Siemens Patents, Wi-LAN's rights of the Siemens Patents are subject to prior valid and enforceable licenses granted by Siemens.  Wi-LAN lacks specific knowledge and information regarding the validity and enforceability of the Siemens License and therefore denies the allegations of this paragraph on this basis.  Wi-LAN further denies these allegations to the extent they purport to impose obligations upon Wi-LAN by which Wi-LAN, not a party to the Siemens License, is not bound.

77.     Wi-LAN admits that Wi-LAN took title of the Siemens Patents subject to

applicable terms of prior valid and enforceable licenses granted by Siemens. Wi-LAN lacks specific knowledge and information regarding the validity and enforceability of the Siemens License and therefore denies the allegations of this paragraph on this basis.

78.    Denied.

79.    Denied

80.    Denied.

81.    Denied.

82.    Wi-LAN admits that Ericsson is seeking a declaration from the Court as set forth in paragraph 82 but denies the merits of the declaration and that Ericsson is entitled to such declaration.

## COUNT II

## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

83.    Wi-LAN restates and incorporates by reference its answers to the allegations of paragraphs 1 through 71.

84.    Admitted, on information and belief.

85.    Wi-LAN admits that Wi-LAN was aware on information and belief that certain products from Ericsson are incorporated by the entities listed in paragraph 84 of the Second Amended Complaint in their networks at the time when Wi-LAN contacted the Customers discussing the potential license partnerships with them. Wi-LAN denies the remaining allegations of this paragraph.

86.    Denied.

87.    Denied.

## COUNT III

### VIOLATION OF FLORIDA STATUTES § 501.201, ET SEQ. THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

88.     Wi-LAN restates and incorporates by reference its answers to the allegations of paragraphs 1 through 71.

89.     Paragraph 89 states a legal conclusion to which no response is required.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

## COUNT IV

### BREACH OF THE SIEMENS LICENSE

94.     Wi-LAN restates and incorporates by reference its answers to the allegations of paragraphs 1 through 71.

95.     Paragraph 95 states a legal conclusion to which no response is required. To the extent a response is deemed necessary, Wi-LAN lacks sufficient knowledge and information to admit or deny the allegations in this paragraph and therefore denies them.

96.     Wi-LAN admits that to the extent the Siemens License is valid and enforceable it purports to grant certain license rights to Ericsson with respect to certain Ericsson products under certain circumstances.  However, Ericsson's allegation is overbroad and therefore incorrect and Wi-LAN denies on that basis.  Wi-LAN further denies on information and belief that Ericsson's customers have a license under the Siemens License that covers their activities.

97.     Wi-LAN admits that on information and belief, each of the Siemens Patents appears to fall within the certain terms of the document referred to as the "Siemens License."

Wi-LAN otherwise denies the allegations of this paragraph to the extent that the allegations plead or imply more than the terms of the document itself.  Wi-LAN lacks specific knowledge and information regarding the validity and enforceability of the Siemens License and therefore denies the remaining allegations of this paragraph on this basis.

98.    Wi-LAN admits that as the assignee of the Siemens Patents, Wi-LAN's rights of the Siemens Patents are subject to prior valid and enforceable licenses granted by Siemens.  Wi-LAN lacks specific knowledge and information regarding the validity and enforceability of the Siemens License and therefore denies the allegations of this paragraph on this basis.  Wi-LAN further denies these allegations to the extent they purport to impose obligations upon Wi-LAN by which Wi-LAN, not a party to the Siemens License, is not bound.

99.    Denied.

100.    Denied.

## PRAYER FOR RELIEF

WHEREFORE, Wi-LAN respectfully requests that Ericsson take nothing by its Second Amended Complaint and that the Court enter a judgment in favor of Wi-LAN on all Counts of Ericsson's Second Amended Complaint.

## JURY DEMAND

Wi-LAN acknowledges Ericsson's request for a jury trial and Wi-LAN similarly requests a trial by jury on all issues so triable.

## FAILURE TO STATE A CLAIM

The Second Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Counts II and III are preempted by federal statutory and constitutional law.

### RESERVATION OF RIGHTS

Wi-LAN reserves the right to assert any other affirmative defenses that discovery may reveal.

### COUNTERCLAIM

Counterclaim Plaintiffs Wi-LAN, Inc., Wi-LAN USA, Inc. and Network Management Solutions, LLC (collectively "Wi-LAN") hereby file the following counterclaim against Counterclaim Defendants Telefonaktiebolaget LM Ericsson and Ericsson Inc. (collectively, "Ericsson"); Verizon Communications Inc. and Cellco Partnership d.b.a. Verizon Wireless (collectively, "Verizon"); AT&T Inc. and AT&T Mobility LLC (collectively, "AT&T"); Sprint Corporation (formerly known as Sprint Nextel Corporation) and Sprint Spectrum L.P. (collectively, "Sprint"); and T- Mobile USA, Inc. ("T-Mobile") (collectively, "Counterclaim Defendants") and allege as follows:

### PARTIES

1.      Counterclaim Plaintiff Wi-LAN, Inc. is a corporation organized and existing under the laws of Canada with its principal place of business at 303 Terry Fox drive, Suite 300, Ottawa, Ontario K2K 3J1 CA.

2.      Counterclaim Plaintiff Wi-LAN USA, Inc. is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 500 W Cypress Creek Road Suite 770, Fort Lauderdale, FL 33309.  Wi-LAN USA, Inc. is a wholly owned subsidiary of Wi-LAN, Inc.

3.      Counterclaim Plaintiff Network Management Solutions, LLC is a limited liability

company organized and existing under the laws of the State of Florida with its principal place of business at 500 W Cypress Creek Road Suite 770, Fort Lauderdale, FL 33309.   Network Management Solutions, LLC is a wholly owned indirect subsidiary of Wi-LAN, Inc.

4.      On information and belief, Counterclaim Defendant Verizon Communications Inc. is a corporation existing and organized under the laws of Delaware and has its principal place of business at 140 West Street, 29th Floor, New York, NY 10007.  Verizon Communications Inc. is registered to do business in Florida, is doing business in the Southern District of Florida, and can be served through its registered agent for service, C T Corporation System, located at 1200 S. Pine Island Rd., Plantation, FL 33324.

5.      On information and belief, Counterclaim Defendant Cellco Partnerships d.b.a. Verizon Wireless is a general partnership existing and organized under the laws of Delaware, is doing business as Verizon Wireless, and has its principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920.   Cellco Partnerships d.b.a. Verizon Wireless is doing business in the Southern District of Florida and can be served through its registered agent for service, Corporation Trust Company, located at Corporation Trust Center 1209 Orange St., Wilmington, DE 19801.

6.      On information and belief, Counterclaim Defendant AT&T Inc. is a corporation existing and organized under the laws of Delaware and has its principal place of business at 208 S. Akard St., Dallas, TX 75202.  AT&T Inc. is doing business in the Southern District of Florida, and can be served through its registered agent for service, Corporation Trust Company, located at Corporation Trust Center 1209 Orange St., Wilmington, DE 19801.

7.      On information and belief, Counterclaim Defendant AT&T Mobility LLC is a corporation existing and organized under the laws of Delaware and has its principal place of

business at 5565 Glenridge Connector, Atlanta, GA 30349.  AT&T Mobility LLC is registered to do business in Florida, is doing business in the Southern District of Florida, and can be served through its registered agent for service, C T Corporation System, located at 1200 S. Pine Island Rd., Plantation, FL 33324.

8.      On information and belief, Counterclaim Defendant Sprint Corporation was formerly known as Sprint Nextel Corporation, is a corporation existing and organized under the laws of Delaware, and has its principal place of business at 6200 Sprint Parkway, Overland Park, KS 66251.  Sprint Corporation is doing business in the Southern District of Florida, and can be served through its registered agent for service, Corporation Service Company, located at 2711 Centerville Rd., Ste. 400, Wilmington, DE 19808.

9.      On information and belief, Counterclaim Defendant Sprint Spectrum L.P. is a limited partnership existing and organized under the laws of Delaware and has its principal place of business at 6500 Sprint Parkway, Overland Park, KS 66251.  Sprint Spectrum L.P. is registered to do business in Florida, is doing business in the Southern District of Florida, and can be served through its registered agent for service, Corporation Service Company, located at 1201 Hays St., Tallahassee, FL 32301.

10.     On information and belief, Counterclaim Defendant T-Mobile USA, Inc. is a corporation existing and organized under the laws of Delaware and has its principal place of business at 12920 S.E. 38th Street, Bellevue, WA 98006.  T-Mobile USA, Inc. is registered to do business in Florida, is doing business in the Southern District of Florida, and can be served through its registered agent for service, Corporation Service Company, located at 1201 Hays St., Tallahassee, FL 32301.

## JURISDICTION AND VENUE

11.     Wi-LAN's Counterclaim arises under the Declaratory Judgment Act, 28 U.S.C.

§§ 2201-2202.

12.     This Court has subject matter jurisdiction over the matters asserted in the Counterclaim pursuant to 28 U.S.C. §§ 1332(a)(3), 1332(c), and 2201.  The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 to the extent the Court has jurisdiction over Ericsson's claims set forth in Counts I and IV of Ericsson's Second Amended Complaint as this Counterclaim forms part of the same alleged case or controversy as at least the first and fourth Counts of Ericsson's Second Amended Complaint, and jurisdiction is proper under 28 U.S.C. §§ 1332(a)(3) and 1332(c).

13.     Counterclaim Defendants Telefonaktiebolaget LM Ericsson and Ericsson Inc. have consented to personal jurisdiction for this action in this District by filing the Original Complaint with the Court.  ECF No. 1.

14.     This Court has personal jurisdiction over Counterclaim Defendant Verizon Communications Inc.  Verizon Communications Inc. is registered to do business in Florida, and has identified C T Corporation System, located at 1200 S. Pine Island Rd., Plantation, FL 33324 as its registered agent.  Verizon Communications Inc. has substantial contacts with the forum and conducts substantial business in the State of Florida and within this district.   Verizon Communications Inc. is the parent corporation of Cellco Partnerships d.b.a. Verizon Wireless, a wholly-owned subsidiary, which is also doing extensive business in Florida.  On information and belief, Verizon Communications Inc., individually or through its operating subsidiaries: maintains facilities, offices and retail store locations within Florida and this district; transacts business in Florida and/or in this district, including through the retail locations maintained within Florida and this district.  These activities in Florida include, on information and belief, actions that are the subject matter of Wi-LAN's ongoing licensing discussions with Verizon.  Further,

this counterclaim relates to Ericsson's act of filing this lawsuit in this district purporting to represent the specific interest of its customers given at least that Ericsson has alleged that Verizon is one of its customers.  *See* Dunstan Decl. In Support Of Ericsson's Reply In Support Of Its Motion for Further Relief. Case No. 1:12-23569-CIV-Middlebrooks/Brannon, ECF No. 138-1 (June 30, 2014).

15.     This Court has personal jurisdiction over Counterclaim Defendant Cellco Partnerships d.b.a. Verizon Wireless. Cellco Partnerships d.b.a. Verizon Wireless has substantial contacts with the forum and conducts substantial business in the State of Florida and within this district.  Cellco Partnerships d.b.a. Verizon Wireless is a wholly-owned subsidiary of Verizon Communications Inc.  On information and belief, Cellco Partnerships d.b.a. Verizon Wireless, individually or through joint and concerted action with its parent corporation, Verizon Communications Inc.: maintains facilities, offices and retail store locations within Florida and this district; transacts business in Florida and/or in this district, including through the retail locations maintained within Florida and this district. These activities in Florida include, on information and belief, actions that are the subject matter of Wi-LAN's ongoing licensing discussions with Verizon.  Further, this counterclaim relates to Ericsson's act of filing this lawsuit in this district purporting to represent the specific interest of its customers, which, on information and belief, include Verizon.  *See* Dunstan Decl. In Support Of Ericsson's Reply In Support Of Its Motion for Further Relief. Case No. 1:12-23569-CIV-Middlebrooks/Brannon, ECF No. 138-1 (June 30, 2014).

16.     This Court has personal jurisdiction over Counterclaim Defendant AT&T Inc. AT&T Inc. has substantial contacts with the forum and conducts substantial business in the State of Florida and within this district.  AT&T Inc. is the parent corporation of AT&T Mobility LLC,

a wholly-owned subsidiary, which is doing and registered to do business in Florida.   On information and belief, AT&T Inc., individually or through joint and concerted action through its operating subsidiaries: maintains facilities, offices and retail store locations within Florida and this district; transacts business in Florida and/or in this district. These activities in Florida include, on information and belief, actions that are the subject matter of Wi-LAN's ongoing licensing discussions with AT&T.   Further, this counterclaim relates to Ericsson's act of filing this lawsuit in this district purporting to represent the specific interest of AT&T.

17.   This Court has personal jurisdiction over Counterclaim Defendant AT&T Mobility LLC.  AT&T Mobility LLC is registered to do business in Florida, and has identified C T Corporation System, located at 1200 S. Pine Island Rd., Plantation, FL 33324 as its registered agent.  AT&T Mobility LLC has substantial contacts with the forum and conducts substantial business in the State of Florida and within this district.  AT&T Mobility LLC is a wholly-owned subsidiary of AT&T Inc.  On information and belief, AT&T Mobility LLC, individually or through joint and concerted action with its parent corporation, AT&T Inc.: maintains facilities, offices and retail store locations within Florida and this district; transacts business in Florida and/or in this district. These activities in Florida include, on information and belief, actions that are the subject matter of Wi-LAN's ongoing licensing discussions with AT&T.  Further, this counterclaim relates to Ericsson's act of filing this lawsuit in this district purporting to represent the specific interest of AT&T.

18.   This Court has personal jurisdiction over Counterclaim Defendant Sprint Corporation, formerly known as Sprint Nextel Corporation.  Sprint Corporation has substantial contacts with the forum and conducts substantial business in the State of Florida and within this district.  Sprint Corporation is the parent corporation of Sprint Spectrum L.P., which is doing and

registered to do business in Florida.  On information and belief, Sprint Corporation, individually or through joint and concerted action through its operating subsidiaries: maintains facilities, offices and retail store locations within Florida and this district; transacts business in Florida and/or in this district, including through the retail locations maintained within Florida and this district. These activities in Florida include, on information and belief, actions that are the subject matter of Wi-LAN's ongoing licensing discussions with Sprint.  Further, this counterclaim relates to Ericsson's act of filing this lawsuit in this district purporting to represent the specific interest of Sprint.

19.     This Court has personal jurisdiction over Counterclaim Defendant Sprint Spectrum L.P.  Sprint Spectrum L.P. is registered to do business in Florida, and has identified Corporation Service Company, located at 1201 Hays St., Tallahassee, FL 32301 as its registered agent.  Sprint Spectrum L.P. has substantial contacts with the forum and conducts substantial business in the State of Florida and within this district.  Sprint Spectrum L.P. is a wholly-owned subsidiary of Sprint Corporation.  On information and belief, Sprint Spectrum L.P., individually or through joint and concerted action with its parent corporation, Sprint Corporation: maintains facilities, offices and retail store locations within Florida and this district; transacts business in Florida and/or in this district. These activities in Florida include, on information and belief, actions that are the subject matter of Wi-LAN's ongoing licensing discussions with Sprint. Further, this counterclaim relates to Ericsson's act of filing this lawsuit in this district purporting to represent the specific interest of Sprint.

20.     This Court has personal jurisdiction over Counterclaim Defendant T-Mobile USA, Inc.  T-Mobile USA, Inc. is registered to do business in Florida, and has identified Corporation Service Company, located at 1201 Hays St., Tallahassee, FL 32301 as its registered agent.  T-

Mobile USA, Inc. has substantial contacts with the forum and conducts substantial business in the State of Florida and within this district.  On information and belief, T-Mobile USA, Inc., individually or through joint and concerted action through its operating subsidiaries: maintains facilities, offices and retail store locations within Florida and this district; transacts business in Florida and/or in this district, including through the retail locations maintained within Florida and this district. These activities in Florida include, on information and belief, actions that are the subject matter of Wi-LAN's ongoing licensing discussions with T-Mobile.  Further, this counterclaim relates to Ericsson's act of filing this lawsuit in this district purporting to represent the specific interest of T-Mobile.

21.     Venue is proper in this district under 28 U.S.C. § 1391 for all Counterclaim Defendants because a substantial part of the events giving rise to Wi-LAN's Counterclaim occurred and are occurring in this district: the Counterclaim is precipitated by Ericsson's Declaratory Judgment action filed against Wi-LAN in this District regarding the applicability and enforceability of the Siemens License with respect to Ericsson's customers, and because Counterclaim Defendants have regular and established practices of business in this district and hence, are amenable to suit in this District and subject to this Court's personal jurisdiction.

22.     The joinder of all Counterclaim Defendants is proper under the Federal Rules of Civil Procedure 13(h) and 20.  Verizon, AT&T, Sprint, and T-Mobile, (collectively "Carrier Counterclaim Defendants") may properly be joined as parties to Wi-LAN's Counterclaim because Wi-LAN's right to relief is asserted against them with respect to or arising out of the same transaction or occurrence: Ericsson's allegation that its customers hold a license under the Siemens License.  The validity, applicability and enforceability of the Siemens License present questions of law and facts common to all Counterclaim Defendants.

**FACTUAL BACKGROUND**

23.     Wi-LAN has engaged in licensing discussions with AT&T, T-Mobile, Verizon, and Sprint, among others, with respect to certain of the Siemens patents and has been told by such companies that the resolution of the dispute regarding the Siemens License impacts whether and to what extent they are required to take a license to the Siemens Patents.

24.     Ericsson's own allegations demonstrate that Ericsson purports to have brought the present action in part to clarify any rights its customers may have under the Siemens License on behalf of certain of its customers.

25.     According to Ericsson's pleadings, the present action was the result of Ericsson's receipt of demands for indemnification and/or assistance from certain of its customers with respect to Wi-LAN's efforts to license those customers to certain Siemens patents related to network alarm management and lawful intercept technologies.

26.     According to Ericsson's Second Amended Complaint, AT&T, T-Mobile, and Sprint have all sought indemnification and/or assistance from Ericsson with respect to Wi-LAN's claims that they infringe certain of the Siemens Patents.

27.     In seeking an injunction barring Wi-LAN from engaging in licensing discussions with its customers, Ericsson specifically alleged that Verizon is one of its customers, thus confirming that this action is intended to adjudicate rights that Ericsson alleges are held by Verizon.  *See* Dunstan Decl. In Support Of Ericsson's Reply In Support Of Its Motion for Further Relief.  Case No. 1:12-23569-CIV-Middlebrooks/Brannon, ECF No. 138-1 (June 30, 2014).

28.     Verizon, along with the other Carrier Counterclaim Defendants, has informed Wi-LAN that it will not enter a license agreement with Wi-LAN with respect to the Siemens Patents at least in part as a result of its status as an Ericsson customer and the impact of the Siemens License on Wi-LAN's claims.  Thus, Wi-LAN and Verizon dispute the scope of Verizon's

substantive rights, and whether Verizon is required to enter a license agreement with Wi-LAN, as a consequence of Ericsson's assertions that its customers are licensed to the Siemens Patents.

29.     Wi-LAN has continued to engage in licensing discussions with AT&T, T-Mobile, Verizon, and Sprint, among others, during the time since Ericsson brought this action and it has become apparent that such discussions are unlikely to lead to an agreement unless and until the alleged rights of the carrier companies under the Siemens License are resolved.

30.     Because Ericsson purports to have brought this action in response to indemnity demands and requests for assistance from its customers with whom Wi-LAN has been and remains engaged in licensing discussions, it is proper that any resolution of rights under the Siemens License involve these additional affected parties so that their interests will be adequately represented and the danger of repetitious proceedings will be minimized.

## COUNT I

## DECLARATORY JUDGMENT THAT THE SIEMENS LICENSE DOES NOT PROVIDE A LICENSE TO ERICSSON'S CUSTOMERS

31.     Wi-LAN incorporates and re-alleges paragraphs 1 through 30 as if fully set forth herein.

32.     The Carrier Counterclaim Defendants have asserted that the resolution of the dispute regarding the Siemens License impacts whether and to what extent they are required to take a license to the Siemens Patents.

33.     Ericsson alleges in its Second Amended Complaint that, *e.g.*, "Ericsson's customers are authorized to make, use, offer to sell, sell and import products or services under the Siemens Patents to the extent that those products or services contain or use, in whole or in part, Ericsson's products" and that "[b]y asserting claims under the Siemens Patents against Ericsson's telecommunications customers, Wi-LAN is in breach of the Siemens License."

33

34.     The Siemens License does not authorize Ericsson's customers to practice the inventions of the Siemens Patents merely because doing so implicates an Ericsson product or service; nor does the Siemens License grant the broad rights to Ericsson's customers asserted in Ericsson's Second Amended Complaint.

35.     Wi-LAN's licensing discussions with the Carrier Counterclaim Defendants do not constitute a "breach" of the Siemens License.

36.     An actual and justiciable controversy exists between Wi-LAN and the Counterclaim Defendants regarding the scope of any rights granted under the Siemens License, their impact on Wi-LAN's right to engage in licensing activities, and whether and the extent to which any rights under the Siemens License are also held by Ericsson's customers including AT&T, T-Mobile, Verizon, and Sprint.

37.     Wi-LAN seeks a declaratory judgment that:

a.  Wi-LAN is not in "breach" of the Siemens License;

b.  the Carrier Counterclaim Defendants do not have the right under the Siemens License to use Ericsson products and services in the manner in which they presently use them;

c.  the Siemens License does not grant a license to Ericsson's customers for any and all activities implicating an Ericsson product or service; and

d.  the Siemens License does not bar Wi-LAN from engaging in licensing discussions with Ericsson's customers with respect to such activities or asserting that such activities constitute infringement of the Siemens Patents.

## **PRAYER FOR RELIEF**

WHEREFORE, Wi-LAN respectfully requests that this Court enter judgment in its favor and against Counterclaim Defendants:

   I.   Entering a declaratory judgment in Wi-LAN's favor as stated above in paragraph 37 of Wi-LAN's Counterclaim; and

   II.   Granting any and all such other relief as the Court deems just and proper.

Dated: September 12, 2014                Respectfully submitted,

                                          _/s/_ James W. Beasley, Jr.

                                         James W. Beasley, Jr.
                                         Florida Bar No. 145750
                                         Joseph G. Galardi
                                         Florida Bar No. 180572
                                         Andrew S. Kwan
                                         Florida Bar No. 76539
                                         BEASLEY KRAMER & GALARDI, P.A.
                                         505 South Flagler Drive, Suite 1500
                                         West Palm Beach, Florida 33401
                                         Tel: (561) 835-0900
                                         Fax: (561) 835-0939
                                         Email:
                                         eservice@beasleylaw.net
                                         galardi@beasleylaw.net
                                         Kwan@beasleylaw.net

                                         Matthew D. Powers (*admitted pro hac vice*)
                                         Paul T. Ehrlich (*admitted pro hac vice*)
                                         Aaron M. Nathan (*admitted pro hac vice*)
                                         Andrew C. Michaels (*admitted pro hac vice*)
                                         Yi Chen (*admitted pro hac vice*)

                                         TENSEGRITY LAW GROUP LLP
                                         555 Twin Dolphin Drive, Suite 360
                                         Redwood Shores, CA 94065
                                         Phone:  (650) 802-6000
                                         Fax:  (650) 802-6001
                                         Email:
                                         matthew.powers@tensegritylawgroup.com
                                         paul.ehrlich@tensegritylawgroup.com
                                         aaron.nathan@tensegritylawgroup.com
                                         andrew.michaels@tensegritylawgroup.com
                                         yi.chen@tensegritylawgroup.com

                                         *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 12, 2014, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will issue an electronic notification of filing to all counsel of record.

<u>/s/</u> Joseph G. Galardi