UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 14-21854-CV-MIDDLEBROOKS

TELEFONAKTIEBOLAGET LM
ERICSSON and ERICSSON INC.,

    Plaintiffs and Counterclaim Defendants,

v.

WI-LAN USA, INC., WI-LAN INC., and
NETWORK MANAGEMENT
SOLUTIONS, LLC,

    Defendants and Counterclaim Plaintiffs.
_____/

WI-LAN USA, INC., WI-LAN INC., and
NETWORK MANAGEMENT
SOLUTIONS, LLC,

    Counterclaim Plaintiffs,

v.

VERIZON COMMUNICATIONS, INC.,
CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS, AT&T INC., AT&T MOBILITY
LLC, SPRINT CORPORATION, SPRINT
SPECTRUM L.P., and T-MOBILE USA, INC.

    Counterclaim Defendants.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon a Motion for Summary Judgment (DE 102), filed by Plaintiffs Telefonaktiebolaget LM Ericsson and Ericsson, Inc. (collectively, "Ericsson") and Counterclaim Defendants Cellco Partnership d/b/a Verizon Wireless, AT&T Mobility LLC, Sprint Spectrum L.P., and T-Mobile USA, Inc. (collectively, "Counterclaim Defendants") on June 19, 2015. On July 9, 2015, Defendants and Counterclaim Plaintiffs Wi-LAN USA, Inc.,

Wi-LAN Inc., and Network Management Solutions, LLC (collectively, "Wi-LAN") filed a Response (DE 121), to which Ericsson and Counterclaim Defendants replied (DE 135) on July 20, 2015. Also before the Court is Wi-LAN's Motion for Summary Judgment (DE 111), filed on June 19, 2015. On July 9, 2015, Ericsson and Counterclaim Defendants filed a Response (DE 122), to which Wi-LAN replied (DE 134) on July 20, 2015. For reasons stated below, Wi-LAN is entitled to summary judgment on all counts of the Second Amended Complaint, and Wi-LAN's Counterclaim is dismissed without prejudice.

## BACKGROUND

In July 2012, Defendant Network Management Solutions, LLC ("NMS"), a subsidiary of Wi-LAN, acquired from Siemens Aktiengesellschaft ("Siemens") four patents, U.S. Patent Nos. 6,351,213, 6,420,968, 6,553,099, and 6,728,688 (the "Patents"), pursuant to a Patent Assignment Agreement between the two companies (the "Assignment Agreement"). (DE 103, Ericsson Statement of Material Facts ("PSMF"), at ¶ 1). Sometime thereafter, Wi-LAN contacted several of Ericsson's customers – Cincinnati Bell Wireless LLC, East Kentucky Network, LLC, Cellular South, Inc. d/b/a C Spire Wireless, Carolina West Wireless, Inc., Cricket Wireless, LLC, Clearwire Corporation, General Communications, Inc., Alaska Communications Systems Group, Inc., AT&T Inc., T-Mobile US Inc., Sprint Nextel Corporation, and Verizon Communications Inc. (the "Carriers") – indicating that each of the Carriers required a license to practice the Patents. (*Id.* at ¶ 12). Believing that Wi-LAN's infringement claims implicate Ericsson's products, the Carriers made demands that Ericsson defend and/or indemnify them based on pre-existing agreements between the Carriers and Ericsson. (*Id.* at ¶ 15).

Ericsson then investigated Wi-LAN's claims of infringement, which allegedly revealed that the Patents were subject to a 1997 cross-license agreement between Plaintiff

Telefonaktiebolaget LM Ericsson ("LME") and Siemens (the "Siemens License"). (PSMF at ¶ 4). Ericsson maintains that pursuant to the Siemens License, LME and Siemens provided each other, their related companies, and their customers with protection from the other's patents. (*Id.* at ¶ 6). The Parties agree that the Patents fall within the definition of SIEMENS PATENTS in the Siemens License. (*Id.* at ¶ 10).

On July 24, 2013, Ericsson informed Wi-LAN by letter that Wi-LAN's claims were covered by the Siemens License, and that Wi-LAN could not "maintain a credible infringement claim for these patents against any Ericsson customer to the extent that such claim implicates Ericsson products or services." (*Id.* at ¶ 17). After not receiving a response, Ericsson wrote Wi-LAN two more times. (*Id.*). Wi-LAN eventually responded that it "has not seen any license agreement between Siemens and Ericsson and therefore does not acquiesce to its existence or, if it exists, what the license may or may not cover." (DE 108-13, Exhibit to Affidavit of Christopher Dunstan ("Dunstan Aff."), December 18, 2013 Letter from Wi-LAN to Ericsson).

On May 19, 2014, Ericsson initiated this action "in response to Wi-LAN's assertions against Ericsson's customers [in order] to clarify the scope of the rights of Ericsson's customers." (PSMF at ¶ 18). In Count I of the Second Amended Complaint, Ericsson seeks pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 a declaration that:

1. [T]he licensing provisions in the Siemens Licenses entered into between LME and Siemens are valid and binding upon Wi-LAN;

2. Ericsson and its customers have a license to the Siemens Patents;

3. Wi-LAN has no legal right to assert claims under the Siemens Patents that Ericsson's customers' making, using, offering to sell, selling or importing products or services containing or using, in whole or in part, Ericsson's products [that] are authorized; and

3

> 4. Wi-LAN may not assert the Siemens Patents or any other patents covered by the Siemens License against Ericsson, its customers or its vendors (all to the extent of the customers' or vendors' use of Ericsson products).

(DE 47 at ¶ 82). Ericsson also alleges a claim under Florida state law for tortious interference (Count II) and a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.* (Count III), maintaining that Wi-LAN intentionally interfered with Ericsson's business relationships with the Carriers. (*Id.* at ¶¶ 83-87, 88-93). In Count IV, Ericsson alleges Wi-LAN breached the Siemens License by contacting Ericsson's customers about potential licensing as to the Patents. (*Id.* at ¶¶ 94-100).

On September 12, 2014, Wi-LAN filed its Answer and Affirmative Defenses to the Second Amended Complaint, and asserted a single Counterclaim against Ericsson and the Counterclaim Defendants.[1] (DE 48). Pursuant to the Declaratory Judgment Act, Wi-LAN seeks a declaration, providing that:

1. Wi-LAN is not in breach of the Siemens License;

2. The Counterclaim Defendants do not have the right under the Siemens License to use Ericsson products and services in the manner in which they presently use them;

3. The Siemens License does not grant a license to Ericsson's customers for any and all activities implicating an Ericsson product or service; and

4. The Siemens License does not bar Wi-LAN from engaging in licensing discussions with Ericsson's customers with respect to such activities or asserting that such activities constitute infringement of the Siemens Patents.

(DE 48, Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Second Amended Complaint, at ¶ 37).

---

[1] Wi-LAN initially filed its Counterclaim against Ericsson, Verizon Communications Inc., Cellco Partnership d/b/a Verizon Wireless, AT&T Inc., AT&T Mobility LLC, Sprint Corporation, Sprint Spectrum L.P., and T-Mobile USA, Inc. (DE 48). However, Counterclaim Defendants Sprint Corporation, AT&T Inc., and Verizon Communications Inc., have been dismissed from this action. (DE 79, 80, 81).

4

The Parties now move for summary judgment. Ericsson moves for partial summary judgment on Counts I and IV, arguing that Wi-LAN is bound by the Siemens License, the Siemens License precludes claims of patent infringement based in whole or in part on Ericsson's products for the use of certain patents, and that by seeking licenses from Ericsson's customers, Wi-LAN has breached the Siemens License. Wi-LAN moves for summary judgment on all counts, arguing, *inter alia*, Ericsson lacks standing to bring its claims for declaratory judgment and breach of contract, and federal patent law preempts Ericsson's claims pursuant to Florida law. Additionally, all Parties move for summary judgment on Wi-LAN's Counterclaim for declaratory judgment.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1034 (Fed. Cir. 2001) (quoting Fed. R. Civ. P. 56). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The non-movant's bare assertions, standing alone, are

5

insufficient to create a material issue of fact and defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *See id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## DISCUSSION

### I. Standing – Declaratory Judgment (Count I) and Breach of Contract (Count IV)

Wi-LAN first challenged Ericsson's standing to bring its claims for declaratory judgment and breach of contract in its Motion to Dismiss. (DE 26). Ericsson argued it had standing because it is a party to the Siemens License and "has standing as an indemnitor of its customers." (DE 36 at 8-9). In denying Wi-LAN's Motion to Dismiss, the Court held that Ericsson had standing because it "established that, under contracts with their customers, they face an actual injury and are obligated to indemnify their customers from infringement liability." (DE 43). Wi-LAN now argues that, through discovery, it has learned that Ericsson has denied that it has any indemnity obligations to its customers. (DE 111 at 19-20).

"A federal court must always satisfy itself of its own jurisdiction." *MDS (Canada) Inc. v. Red Source Techs., Inc.*, 720 F.3d 833, 843 (11th Cir. 2013) (citations omitted). "A plaintiff seeking to invoke a federal court's jurisdiction bears the burden of establishing standing." *See Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004) (citing *Lujan v. Defenders*

6

*of Wildlife*, 504 U.S. 555, 560-61 (1992)). To establish standing, Ericsson has the burden of establishing the following three requirements: (1) "injury-in-fact," which is "actual or imminent, not 'conjectural' or 'hypothetical'"; (2) "a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61.

For cases brought pursuant to the Declaratory Judgment Act, Article III's case or controversy requirement is met where the dispute between the Parties is "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). In other words, the inquiry is focused on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941)).

With all relevant evidence now before the Court, it is clear Ericsson has failed to establish that it has standing to maintain its claims for declaratory judgment and breach of contract. *See Lujan*, 504 U.S. at 561 (explaining that "[a]t the pleading stage, general factual allegations of injury . . . may suffice," but "[i]n response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts . . . .'") (citations omitted). Ericsson's claims for declaratory judgment and breach of contract are not based on any infringement allegations made

7

by Wi-LAN against Ericsson. Indeed, throughout the course of this litigation, Wi-LAN has maintained that "Ericsson itself has not been accused of infringing any of the relevant patents." (DE 26 at 2); (DE 44, Transcript of Pretrial Scheduling Conference, at 50:7-8) (counsel for Wi-LAN indicated that it has not "asserted th[e] patents against Ericsson."). Rather, Ericsson essentially asks the Court to adjudicate a hypothetical claim of non-infringement on behalf of Ericsson's non-party customers.

The Supreme Court has counseled that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted). As explained above, Ericsson argued it has standing as an indemnitor of its customers. (DE 36 at 9). Now, Ericsson takes the position that "it is premature for Ericsson to commit one way or another" as to whether it has a duty to defend and/or indemnify the Carriers. (DE 123, Ericsson and Counterclaim Defendants' Statement of Material Facts in Opposition to Wi-LAN's Motion for Summary Judgment, at ¶ 51). Significantly, Ericsson maintains that "we have no indemnity liability here" because "Wi-LAN has not brought infringement claims in this litigation." (DE 116-6, Deposition of Christopher Dunstan, at 16:2-6).

Without any indemnification obligations to the Carriers, Ericsson does not presently have a legally adverse interest to Wi-LAN. *See, e.g., Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1316 (Fed. Cir. 2011) (holding that "[i]n the absence of an indemnity agreement between Starmark and one of these 'customers,' Starmark has, at most, only an economic interest in clarifying its customers' rights under Creative's patents. Such an economic interest alone, however, cannot form the basis of an 'actual controversy' under the Declaratory Judgment Act."). Further, the mere fact that certain Carriers made indemnification demands on Ericsson is

8

not sufficient to confer standing. *See, e.g., Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) (explaining that "Appellees seek to broaden our precedent quite substantially by arguing that a customer request to indemnify ought to give rise to standing, without regard, it appears, to the merit of the customer request. This cannot be."). Having denied that it has any indemnification obligations to the Carriers, Ericsson does not have standing to maintain its claim for declaratory judgment on behalf of its customers.

As to Ericsson's argument it has standing to clarify its own rights under the Siemens License through a Declaratory Judgment, Ericsson has not shown a "substantial controversy" between itself and Wi-LAN. Any injury to Ericsson at this juncture is merely speculative and not of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty*, 312 U.S. at 273.

Even if Ericsson had standing, the Court would alternatively decline to exercise jurisdiction to entertain Ericsson's claim for declaratory judgment. The Declaratory Judgment Act affords courts broad discretion to hear claims for declaratory judgment. *See Otwell v. Alabama Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) ("noting that "[i]t is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory.") (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995)). The Supreme Court has counseled that "[i]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton*, 515 U.S. at 288. As discussed above, there is no present case or controversy between Ericsson and Wi-LAN. Additionally, Ericsson's requested declaratory judgment is vague and overbroad, and implicates conduct and parties that may not be

9

protected by the Siemens License. Issuing the declaratory judgment requested by Ericsson, therefore, would not serve a useful purpose.

Finally, Ericsson cannot demonstrate standing for its breach of contract claim. Ericsson does not allege or argue that Wi-LAN breached any specific provision of the Siemens License. Rather, Ericsson maintains that "[a]ny patent license agreement . . . is in essence a promise not to assert the patents covered by that license." (DE 102 at 19). Ericsson argues that "[t]o the extent Ericsson's customers use Ericsson's products, those customers should, by contract, by free from claims of infringement of the patents covered by that license." (*Id.*). Ericsson contends, therefore, that "[i]n asserting the Patents against Ericsson's customers, Wi-LAN has breached" the Siemens License. (*Id.*).

However, any injury resulting from Wi-LAN's alleged breach of the Siemens License has been suffered by the Carriers. For the reasons stated above, Ericsson has no standing to assert an injury on behalf of the Carriers based on any indemnity theory. Further, Ericsson has not alleged that it has suffered any actual injury from the alleged breach of the Siemens License.[2] Thus, Ericsson does not have standing to maintain its claim for breach of contract.

In sum, Ericsson has failed to demonstrate the existence of any case or controversy with Wi-LAN. Specifically, Ericsson has failed to establish standing on behalf of its customers and has not, therefore, demonstrated that it has or will suffer any real or imminent injury as a result of Wi-LAN's actions. Alternatively, the Court declines to entertain Ericsson's claim for

---

[2] Ericsson argues that it has incurred damages as a consequence of Wi-LAN's actions in the form of attorneys' fees and costs for responding to its customers' demands for indemnification. (DE 122 at 16). However, any attorneys' fees that have been incurred by Ericsson are directly tied to its own decision to bring suit on behalf of its customers. Ironically, its "damages" at this juncture are of its own making. Further, any fees incurred responding to its customers' demands for indemnification are a result of Ericsson's separately contracted indemnification agreements with its customers, not a result of the Siemens License.

declaratory judgment. For these reasons, Ericsson lacks standing to maintain its claims for declaratory judgment and breach of contract, and Counts I and IV are dismissed for lack of subject matter jurisdiction.

## II. State Law Claims – Count II (Tortious Interference With a Business Relationship) and Count III (Violation of the Florida Deceptive and Unfair Trade Practices Act)

In Count II, Ericsson alleges tortious interference with a business relationship, and in Count III, Ericsson alleges a violation of FDUTPA. (DE 47 at ¶¶ 83-87; 88-93). Ericsson maintains that Wi-LAN "had knowledge of Ericsson's business relationships with the [Carriers]," and that "Wi-LAN's allegations of patent infringement against the [Carriers] intentionally and unjustifiably interfered with Ericsson's business relationships with the [Carriers]." (*Id.* at ¶¶ 85, 86). Ericsson also alleges "Wi-LAN did so in bad faith, with knowledge that Ericsson already had a license to the [] Patents by virtue of the Siemens [License]." (*Id.* at ¶ 90). Wi-LAN argues that Count II and Count III fail as a matter of law because they are preempted by federal patent law. (DE 111 at 14). Specifically, Wi-LAN maintains that its licensing activities were "entirely lawful and appropriate given the unlicensed nature of the carrier's system." (*Id.* at 13). Accordingly, Wi-LAN argues that it is entitled to summary judgment as to Counts II and III.

It is well established that a patent holder has a right to enforce its patents in good faith, and cannot be liable under state law for good faith enforcement efforts. *See Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) (noting "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation."); *Clearplay, Inc. v. Nissim Corp.*, No. 07-81170, 2011 WL 3878363, at *8-9 (S.D. Fla. Sept. 2, 2011) (holding state law tortious interference and FDUTPA claims based on warnings of patent

11

infringement were preempted absent a showing of bad faith), *aff'd* 496 F. App'x 963 (11th Cir. 2012). A state law tort claim can, therefore, only be sustained against a patent holder upon a showing of "bad faith." *See 800 Adept, Inc. v. Murex Securities, Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008) (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999)) (noting that "[s]tate tort claims against a patent holder, including tortious interference claims, based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent.").

The bad faith standard has an objective and a subjective element, both of which must be met. *See Dominant Semiconductors SDN. BHD. v. Osram GMBH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008). The objective requirement requires a plaintiff to show that the infringement allegations are "objectively baseless." *Globetrotter*, 362 F.3d at 1376. Infringement allegations are "objectively baseless" where "no reasonable litigant could realistically expect success on the merits." *Dominant Semiconductors*, 524 F.3d at 1260 (citations omitted). In other words, "if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Zenith*, 182 F.3d at 1354. For the subjective element, a plaintiff must show that the patent holder acted in subjective bad faith when enforcing its patent. *See Globetrotter*, 362 F.3d at 1376. If the plaintiff fails to show that the infringement allegations are objectively baseless, courts do not have to address the patent holder's subjective intent. *See 800 Adept*, 539 F.3d at 1370.

Here, Ericsson fails to identify evidence that demonstrates an issue of material fact as to whether Wi-LAN acted in objective bad faith. Specifically, Ericsson fails to demonstrate that

12

Wi-LAN had "no reasonable basis to believe that its patent claims were valid or that they were infringed." *800 Adept*, 539 F.3d at 1370. The Parties do not dispute the validity of the Patents. Further, Ericsson's insistence that Wi-LAN is precluded from bringing a patent infringement claim against the Carriers based on the Siemens License is far from certain. Ericsson may ultimately be correct that the Siemens License does in fact preclude Wi-LAN from pursuing infringement claims against the Carriers. However, at this juncture, Ericsson has only showed that Wi-LAN has not acted in a manner that conforms with Ericsson's interpretation of the Siemens License.

Ericsson similarly fails to raise an issue of material fact as to whether Wi-LAN acted in subjective bad faith. The Parties do not dispute that at the time Wi-LAN acquired the Patents, Wi-LAN did not see a copy of the Siemens License. (DE 112, Defendants' Statement of Material Facts ("DSMF"), at ¶ 4). In fact, the Parties do not dispute that Wi-LAN did not see the Siemens License prior to April 2014. (*Id.* at ¶ 5). Accordingly, at the time Wi-LAN contacted the Carriers (late 2012 – early 2013), it does not appear that Wi-LAN was aware of either the Siemens License or Ericsson's defense that Wi-LAN is precluded from asserting a claim of patent infringement against the Carriers pursuant to the Siemens License. For these reasons, Ericsson has failed to demonstrate the existence of an issue of material fact that Wi-LAN acted in bad faith, and Wi-LAN is entitled to summary judgment as to Counts II and III.

### III. Wi-LAN's Counterclaim

Wi-LAN filed a Counterclaim against Ericsson and the Counterclaim Defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.[3] (DE 48, Answer,

---

[3] The Court questions whether it has jurisdiction over Counterclaim Defendants Cellco Partnership, AT&T Mobility LLC, and Sprint Sprectrum L.P. because Wi-LAN does not properly allege their citizenship. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613

Affirmative Defenses, and Counterclaim to Plaintiff's Second Amended Complaint). In Wi-LAN's reply in support of their Motion for Summary Judgment, Wi-LAN requested that "[i]f the Court dismisses [Ericsson's claim for Declaratory Judgment], the related part of Wi-LAN's counterclaim should be dismissed without prejudice." (DE 134 at 10). It is unclear which portion of Wi-LAN's declaratory judgment it views as the "related part."

In any event, Wi-LAN does not have standing to maintain its claim for declaratory judgment. *See Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) ("Any time doubt arises as to the existence of federal jurisdiction, we are obliged to address the issue before proceeding further.") (citations omitted). Wi-LAN has maintained throughout this litigation that it is not a party to the Siemens License. As a purported non-party to the Siemens License, Wi-LAN does not have a legally cognizable interest in clarifying any rights under the Siemens License. For this reason, Wi-LAN does not have standing to maintain its Counterclaim.

Alternatively, the Court declines to exercise its jurisdiction over Wi-LAN's Counterclaim because it is vague and overbroad. *See Wilton*, 515 U.S. at 287 (explaining that under the Declaratory Judgment Act, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power."). It also does not seem appropriate to rule on the propriety of a potential defense for the Carriers, when doing so only serves the purpose of giving Wi-LAN more clarity regarding which customers it may engage in licensing discussions.

---

F.3d 1079, 1086 (11th Cir. 2010) (explaining that "unincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. § 1332.").

Exercising jurisdiction over Wi-LAN's Counterclaim would not, therefore, serve a useful purpose, and Wi-LAN's Counterclaim is dismissed.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Ericsson's Motion for Summary Judgment (DE 102) is **DENIED**;

2. Wi-LAN's Motion for Summary Judgment (DE 111) is **GRANTED IN PART AND DENIED IN PART**. Counts I and IV are **DISMISSED WITHOUT PREJUDICE**. Wi-LAN is entitled to judgment as a matter of law as to Counts II and III. Wi-LAN's Counterclaim is **DISMISSED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 14 day of August, 2015.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record